THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEITH WEST, Defendant-Appellant.

First District (2nd Division)    No. 1—97—0896

Opinion filed July 14, 1998.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Jennifer Sharma, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

After a bench trial defendant Keith West was found guilty of possession of a stolen motor vehicle and unlawful use of a weapon by a

felon. He was sentenced to seven years' imprisonment for possession of a stolen motor vehicle and four concurrent years for unlawful use of a weapon. Defendant appeals, claiming that: (1) he was not proven guilty beyond a reasonable doubt of unlawful use of a weapon by a felon; (2) the trial court improperly prevented defendant from bringing in certain defense witnesses to testify at trial and trial counsel was ineffective in failing to produce these witnesses at trial; and (3) a *per se* conflict of interest existed since during trial defense counsel was in the midst of surrendering his license to the Attorney Registration and Disciplinary Commission. We affirm.

Howard Melton testified that on January 13, 1996, he parked his four-door burgundy Cadillac, bearing license plate ELE 4, in front of his apartment on 72nd Street, in Chicago. The next morning, Melton discovered that his car was missing. He noticed broken glass on the ground where the car had been parked. He called the police to report that his Cadillac had been stolen. Melton testified that no one else had keys to the vehicle or permission to possess the Cadillac. He testified that on January 13, the car doors were locked and the car was not damaged.

Melton testified that on January 17, 1996, he recovered his Cadillac from the police impoundment lot. Melton observed that the Cadillac had been severely damaged since he last saw it on January 13, 1996. The right passenger side door had dent marks, the small driver's side window had been smashed, the glove compartment had been forced open and items were missing from it, the trunk had been forced open and two new tires were missing.

Officer Tom Shannon testified that on January 17, 1996, he was working in the area of 7900 South Exchange Street in Chicago with his partner, Officer Ratajack. At approximately 5 p.m. as Officer Shannon was driving northbound on Exchange, he observed an older model four-door Cadillac with high-beam headlights and a broken window going southbound on Exchange. Officer Shannon turned his car and started following the Cadillac southbound. Officer Shannon spotted the license plate on the rear of the Cadillac and called in to check the plate. After the dispatcher informed him that the Cadillac had been stolen, Officer Shannon activated his emergency lights and sirens and attempted to stop the vehicle.

Defendant, driving the vehicle, did not stop. Officer Shannon testified that he pursued the vehicle for approximately six blocks, remaining in radio communication with other police units, until defendant suddenly stopped in the vicinity of 7920 Burnham Street and fled from the Cadillac. Officer Shannon, a few feet behind the stopped Cadillac, observed defendant running away and began to chase him. As defen-

dant ran westbound through some gangways, Officer Shannon noticed defendant had a handgun in his right hand. Officer Shannon radioed directions to other police units.

Defendant continued to flee, running through an alley and another set of gangways to Manistee Street, where he ultimately ran into a police unit waiting for him at that location. As Officer O'Callahan put defendant down on the car, the handgun was loosened from defendant's hand. Officer Shannon recovered the handgun.

During trial, Officer Shannon was shown and identified a Raven Arms semi-automatic .25-caliber handgun, its magazine, and six .25-caliber hollow-point bullets. Officer Shannon also testified that photographs shown marked as People's exhibit No. 1, depicting the vehicle with a broken opera window and a peeled steering column, showed the vehicle in the same condition as when he saw it on January 17. Officer Shannon also testified that there were no keys in the ignition of the vehicle when he saw it on January 17.

The State moved to admit into evidence a certified statement from the Illinois Department of Corrections (IDOC) for burglary case No. 94 R 556601, for Todd McGlynn, which the State claimed was defendant's alias. Attached to the certification was a photograph, a photocopy of the order of sentencing and commitment to the IDOC for Todd McGlynn and photocopies of fingerprints. Defendant objected on the basis that no link had been established between Todd McGlynn and defendant and because the IDOC records were not public records. The trial court allowed into evidence the mittimus from the circuit court of Cook County, the certified statements of conviction, the photograph and the fingerprints, subject to any other evidence the State might have to tie them to the conviction.

Mattie L. West, defendant's mother, testified that defendant was left-handed and she never saw him with a gun. West testified that on January 20, 1996, Monique Mahaffery stopped at her house to visit. Someone named Maurice waited in the car.

Defendant testified that at approximately 4:30 p.m. on January 17, 1996, Maurice Johnson came to visit him at his apartment at 7949 South Marquette in Chicago. Defendant stated that Maurice was driving a 1984 Cadillac Sedan DeVille. Defendant stated that he had known Maurice for about eight months but had never seen this car in Maurice's possession prior to January 17, and he did not know whether Maurice actually owned the Cadillac. Defendant asked to borrow the Cadillac so that he could pick up his girlfriend, Michaelene Mahaffery, from the bus stop. Defendant testified that Maurice allowed defendant to borrow the car and gave him the keys. Defendant testified that the interior of the car was clean and the only damage was a cracked rear

opera window. Defendant testified that the damage to the car, shown in People's exhibit No. 1, did not exist at the time that he was in the car.

Defendant testified that he drove northbound on Marquette and then proceeded southbound on Exchange. As he was driving southbound on Exchange, between 77th and 79th, he was unable to see the northbound lane because the train platform extended to the corner of 77th Street. Defendant further stated that he would be unable to turn his vehicle anywhere between 77th and 79th on Exchange because of the train platform. Defendant stated that he drove to the bus stop where he was supposed to pick up his girlfriend; however, she was not there, so he proceeded to go westbound on 79th Street and then made a left turn on Manistee Street to Burnham Street. Defendant went to his girlfriend's house at 7924 South Burnham.

Defendant testified that after he parked the car and started approaching the fence surrounding the apartment complex, he heard two voices behind and to the left of him. A male voice said, "Don't move," and a female voice said, "Nigger, I'll shoot you." Defendant stated that he never saw who was speaking, because he "took off, afraid for [his] life." Defendant ran until he encountered a police officer standing on Manistee Street. Defendant stated that he asked the officer for assistance, but, as the officer was helping him, a male and female officer approached them and stated, "That's him, that's him." Defendant testified that he was then slammed facedown on the car, roughed up to the point where his left thumb was broken, handcuffed and placed in a vehicle. Defendant denied being in possession of a gun and denied knowing that the car was stolen.

At the conclusion of this evidence, defendant was found guilty of possessing a stolen motor vehicle and of unlawful use of a weapon by a felon, and sentenced to seven years in prison on the first count and four years on the second count, the sentences to run concurrently.

■ Defendant first claims that he was not proven guilty beyond a reasonable doubt of unlawful use of a weapon since the State failed to prove that he had a prior felony conviction. A conviction of unlawful possession of a weapon by a felon requires proof beyond a reasonable doubt of the defendant's prior felony conviction. 720 ILCS 5/24—1.1 (West 1994). A certified copy of the defendant's conviction may be offered as proof of an underlying conviction, and if the name on the certified record is the same as the name of the defendant on trial, a rebuttable presumption of identity arises. *People v. Davis*, 95 Ill. 2d 1, 447 N.E.2d 353 (1983). Where the presumption is not rebutted, a defendant is not prejudiced by finding that a certified copy of his prior conviction, without more, meets the State's burden of proving this el-

ement beyond a reasonable doubt. *People v. Smith*, 148 Ill. 2d 454, 593 N.E.2d 533 (1992). If the presumption does not apply or is rebutted, other evidence must be adduced to substantiate that the defendant is the person named in the record of conviction. *People v. Moton*, 277 Ill. App. 3d 1010, 661 N.E.2d 1176 (1996).

The State in the instant case moved to admit a certified statement of conviction for burglary case No. 94 CR 556601, for Todd McGlynn, which the State claimed was defendant's alias. The State moved to admit a certified public record from the IDOC which stated:

"I Marie Velles Carlson, Executive to Record Office, Statesville Correctional Center, do hereby affirm the attached foregoing is a true and accurate copy of fingerprints, photos and mittimus' from the master file of inmate McGlynn."

Attached to the certification was a photograph of Todd McGlynn and inmate number B57079, a photocopy of the sentencing and commitment to the IDOC for Todd McGlynn and a photocopy of fingerprints.

■ Defense counsel objected to the admission of the documents, claiming that the IDOC records were not public records as set forth in section 3—5—1 of the Unified Code of Corrections (730 ILCS 5/3—5—1 (West 1996)). However, the trial court stated that IDOC kept public records and that the sole purpose of the documents that the State sought to admit was to link the conviction of Todd McGlynn with defendant. The trial court thus admitted "the photograph, the copy of the order of sentencing commitment to the Department of Corrections, the fingerprint, subject to any other evidence that the State might have to tie them up and the certification."

Defendant claims that the photograph was inadmissible hearsay since section 3—5—1 of the Unified Code of Corrections does not mention photographs in the IDOC master file comprising the public record. The master record file is a public record and thus may be admitted under an exception to the hearsay rule. *People v. Kautz*, 272 Ill. App. 3d 444, 651 N.E.2d 772 (1995). While section 3—5—1 does not specifically mention photographs as being included in the master record, it does state that "all information from the committing court" is included. 730 ILCS 5/3—5—1(a)(1) (West 1996). We therefore find that the photographs were properly admitted under the public records exception to the hearsay rule.

■ We next consider whether these photographs were sufficient to find Todd McGlynn and defendant to be the same person. While we have found no Illinois cases addressing this issue, we are persuaded by the following cases from other jurisdictions. In *State v. Nylon*, 563 S.W.2d 540 (Mo. Ct. App. 1978), a photograph was included with the record of the conviction L.W. Brown. The Missouri Court of Appeals

assumed that the trial court compared the photograph of Brown with defendant, Johnny Nylon, and determined that they were one and the same. The court found this comparison sufficient evidence to conclude that Johnny Nylon and L.W. Brown were the same person. See also *Williams v. State*, 946 S.W.2d 886 (Tex. Ct. App. 1997) (Texas Court of Appeals found that photographs made available to the jury for comparison with the accused provided independent evidence necessary to prove the accused was previously convicted). We too find that the trial court, in comparing the photograph of Todd McGlynn with defendant, had sufficient basis to determine that defendant had been convicted previously under the name Todd McGlynn.

■ Defendant next contends that the trial court erred in not compelling the sheriff to execute bench warrants issued for three defense witnesses and that his counsel was ineffective by not supplying information to the trial court regarding these witnesses. Defense counsel issued subpoenas for three witnesses who failed to appear in court. Defense counsel requested that warrants be issued by the trial court to compel the witnesses to appear. Defense counsel also requested and was granted several continuances in order to get the witnesses into court. The trial court issued warrants, but never compelled the sheriff to execute them, and the trial proceeded without the witnesses.

Although defendant claims that the testimony of Monique Mahaffery, Annette Williams, and Rachel William was crucial to his defense, defendant failed to make an offer of proof stating what the excluded testimony would reveal. As such, defendant has waived this issue for the purposes of review. *People v. Andrews*, 146 Ill. 2d 413, 588 N.E.2d 1126 (1992).

Moreover, we do not find defense counsel's failure to supply the court with information about these witnesses so that a warrant could be issued for their arrest to constitute ineffective assistance of counsel. A conviction will not be reversed for ineffective assistance of counsel unless the defendant shows that his counsel's performance was so deficient that it fell below the objective standard of reasonableness and that his counsel's performance so prejudiced his defense as to deny him a fair trial. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The testimony at trial gives us no reason to believe that these witnesses were crucial to defendant's defense or would have had any impact on the result of the trial. Defendant testified that he thought the car belonged to a friend, Maurice, that the car was in good condition when he borrowed it, and that he had no knowledge the car was stolen. However, Officer Shannon testified and introduced photographs showing that the car was heavily damaged when defendant was stopped. The steering wheel was peeled,

there were no keys in the ignition, the interior of the car was damaged and the side window was broken. Officer Shannon testified that defendant had a gun with him when he was stopped. This evidence clearly demonstrated that defendant was guilty of possession of a stolen vehicle and unlawful use of a weapon by a felon. The three witnesses defendant claims were so crucial to his defense were never mentioned by defendant during his testimony. Thus, we do not see how their testimony could have been so important as to affect the outcome of defendant's trial.

■ Defendant's final contention is that he was denied his right to effective assistance of counsel since defense counsel Jeffery Gehl represented him while in the midst of surrendering his license to the Attorney Registration and Disciplinary Commission (ARDC). The record reveals that on September 23, 1996, Gehl filed a motion asking the Supreme Court of Illinois that his license to practice law be stricken from the rolls of Illinois. Defendant's case went to trial on November 8, 1996, and defendant was found guilty on that date. On November 26, 1996, the supreme court granted Gehl's motion to strike his name from the roll of attorneys. Defendant claims that the fact that disciplinary proceedings were pending against Gehl and he was in the process of surrendering his law license at the time of defendant's trial reveals a *per se* conflict of interest, resulting in defendant's receiving *per se* ineffective assistance of counsel.

A *per se* conflict of interest exists when the defense counsel has a tie to a person or entity that would benefit from an unfavorable verdict to the defendant. *People v. Massa*, 271 Ill. App. 3d 75, 648 N.E.2d 123 (1995). Generally, *per se* conflicts are created by defendant counsel's prior or contemporaneous association with the prosecution witnesses or the victim. *People v. Spreitzer*, 123 Ill. 2d 1, 525 N.E.2d 30 (1988).

That defense attorney has disciplinary proceedings pending during his representation of a defendant does not automatically dictate the conclusion that defendant is entitled to a new trial for ineffective assistance of counsel. *People v. Szabo*, 144 Ill. 2d 525, 582 N.E.2d 173 (1991) (supreme court declined to create a *per se* conflict of interest rule where attorney represented criminal defendant while disciplinary action by the ARDC was pending); *People v. Allen*, 220 Ill. App. 3d 772, 580 N.E.2d 1291 (1991). The mere fact that an attorney may have been distracted by his pending suspension does not rise to the level of *per se* conflict of interest. *Allen*, 220 Ill. App. 3d at 784. Rather, whether a lawyer's services constituted ineffective assistance of counsel should be considered on a case-by-case basis and in light of the standard set forth in *Strickland*. *Allen*, 220 Ill. App. 3d at 782-83; *People v. Perry*, 183 Ill. App. 3d 534, 540 N.E.2d 379 (1989).

In order to show that he received ineffective assistance of counsel, defendant must therefore point to facts revealing that his counsel's performance was so deficient that it fell below the objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Defendant claims that Gehl's incompetence was shown by his abandonment of compelling the appearance of missing witnesses and his repeated failure to appear in court. The trial court found that defendant was not denied effective assistance of counsel since none of the matters alleged in the disciplinary charges involved defendant's case, defense counsel vigorously represented defendant and made numerous attempts to locate witnesses, and the evidence clearly shows defendant's guilt. Our review of the record reveals no persuasive reason for us to reach a different conclusion.

Accordingly, for the reasons set forth above, defendant's conviction is affirmed.

Affirmed.

RAKOWSKI and COUSINS, JJ., concur.