2 February 2000

NO. 4-98-0753

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee,    ) Circuit Court of

          v. ) Champaign County

DERRICK S. WHITE, ) No. 97CF1718 

          Defendant-Appellant.     ) 

              ) Honorable

                    )    Thomas J. Difanis,

                               )    Judge Presiding.

_________________________________________________________________

JUSTICE GARMAN 
delivered the opinion of the court:

A jury convicted defendant, Derrick S. White, of two counts of attempt (first degree murder of a peace officer) (720 ILCS 5/8-4(a), 9-1(a), 9-1(b)(1) (West 1996)), and one count each of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a) (West 1996)), armed violence (720 ILCS 5/33A-2 (West 1996)), and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 1996)).  Defendant raises
 nine arguments on appeal:  (1) the State failed to prove his prior felony beyond a reasonable doubt; (2) the State failed to prove the charges of attempt (first degree murder of a peace officer) and aggravated discharge of a firearm beyond a reasonable doubt; (3) the trial court denied defendant his sixth amendment (U.S. Const., amend. VI) right to a defense; (4) the trial court abused its discretion by refusing to give defendant's  tendered pattern jury instruction No. 3.11 (Illinois Pattern Jury Instructions, Criminal, No. 3.11 (3d
 ed. 1992)) (hereinafter IPI Criminal 3d No. 3.11); (5) the 100-year sentence for attempt (first degree murder of a peace officer) and the 45-year sentence for aggravated discharge of a firearm must be reduced to the statutory limits existing prior to the enactment of Public Act 88-680 (Pub. Act 88-680, art. 35, §35-5, eff. January 1, 1995 (1994 Ill. Laws 2750, 2782-83)), because Public Act 88-680 violates the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)); (6) defendant's conviction for unlawful possession of a weapon by a felon must be vacated because it arose from the same physical act as the armed violence conviction; (7) the aggregate length of defendant's consecutive sentences exceeds the limit provided in section 5-8-4(c)(2) of the Unified Code of Corrections (Corrections Code) (730 ILCS 5/5-8-4(c)(2) (West 1996)); (8) the trial court imposed excessive sentences; and 
(9) the trial court should have declared a mistrial or, at least, held an evidentiary hearing because of possible juror misconduct.  We affirm in part, vacate in part, and remand for a new sentencing hearing.

I. BACKGROUND

During the evening hours of December 2, 1997, Lieutenant Kris Bolt patrolled the area near Motel 6 in Urbana, Illinois, in a marked squad car.  Bolt worked for the Champaign County sheriff's department.  Bolt drove twice through the Motel 6 parking lot because it was known for drug activity.  Each time, Bolt observed defendant and a young child standing outside an open window by room 127 on the ground floor.  On the second occasion, Bolt stopped his car and told defendant that he and the child "might as well go in."  Bolt then watched as a female handed him a key through an open window of room 127 and defendant walked to the door.

Bolt drove to the registration desk and obtained defendant's registration card, which listed the name "Derick White" and a driver's license number.  Bolt ran the information through his mobile data terminal and learned that there was an outstanding  warrant for defendant's arrest in Cook County.

Bolt confirmed the validity of the warrant near midnight.  Thereafter, Bolt, Deputy Alan Jones, and Lieutenant Steven Malloch went to room 127 at Motel 6.  Jones and Malloch also worked for the Champaign County sheriff's department.  A female in the room advised them that defendant might be at the house of Priscilla Nash-Peete in Champaign and that he was driving Nash-Peete's green van.  Because defendant was possibly in Champaign, the officers contacted Sergeant Scott Swan at the Champaign police department to confer on how they would apprehend defendant. 

Officer Thomas Walker, from the Champaign police department, was dispatched to survey Nash-Peete's house and Jones was stationed nearby.  Walker parked his unmarked car about one-

half block north of Nash-Peete's house and walked up to the house.  Jones parked his marked sheriff's car at the south edge of a nearby Howard Johnson's.  Bolt, Swan, Malloch, and Lieutenant John Murphy also took positions up in a nearby House of Fabrics parking lot.  Murphy was an officer with the Champaign police department.  Malloch and Murphy waited in a parked, unmarked, Chevy Caprice.  Swan and Bolt also waited in another parked, unmarked Chevy Caprice.

As the officers waited, Murphy, who was familiar with Nash-Peete's van, saw the van pass.  Murphy and Malloch began to pursue the van.  Swan followed behind in his car with Bolt.  As they pursued defendant, the officers passed Jones, who pulled his car between Murphy's and Swan's.  Defendant significantly increased his speed until he "whipped" into Nash-Peete's driveway and came to an abrupt stop.  Defendant ran away from the van, leaving the motor running and the driver's door open.

Defendant ran through an open area between Nash-Peete's garage and house.  By this time, Swan had pulled behind Murphy's car and Jones had cut through the yard in his marked car.  Malloch, Bolt, and Jones exited their respective cars and pursued defendant.  Swan and Murphy pursued defendant in their cars.  Walker was standing by the north side of Nash-Peete's garage when defendant pulled into the driveway.  Walker peeked around the corner of the garage and saw defendant run toward him while holding a gun in his right hand.  Defendant ran past Walker, and Walker pursued him on foot.  Walker turned on his police radio and yelled, "Police, stop!" two or three times and "get down" several times.

Swan saw Walker pursuing defendant.  Defendant ran directly in front of Swan's marked squad car as he tried to get away.  Walker pursued defendant into the backyard of another house.  Defendant jumped the fence and it collapsed.  Walker jumped the fence and continued to pursue defendant.  Walker saw Officer Brian Hockings pull up in a Champaign police department squad car.  Hockings had a canine with him, which Walker told Hockings to release.  Walker ran by Hockings but paused briefly because he believed the dog was going to chase him instead of defendant.  Walker then heard about 10 gunshots but did not see who fired them.  When Walker heard the shots, he moved back along Nash-Peete's garage toward a chain-link fence.

Defendant ran at full speed and ended up running directly in Bolt's direction.  Bolt testified that defendant was dressed like the man he had seen outside room 127 at the Motel 6.  Bolt yelled "Police, get down!" when defendant was about 30 feet away, but defendant continued to run.  Bolt then observed a red laser beam emanating from defendant's waist area, from defendant's gun.  Defendant aimed the laser beam directly at Bolt.  Bolt ran for cover by pushing into a stretch of tall brush and then turned to face defendant as he continued to move backward through the brush.  Defendant fired two gunshots at Bolt from approximately 10 feet away.  Bolt returned fire until he expended the rounds in his gun, then turned and pushed his way through the brush.  Defendant fired two additional gunshots at Bolt as his back was turned. 

Defendant took cover near a row of bushes.  Bolt saw defendant attempt to work the slide on his gun and saw the laser beam sweeping the area.  Bolt reloaded and fired more gunshots at defendant from about 20 to 25 feet away.  

Walker had by this time taken cover behind a utility pole.  Murphy had taken cover behind a tree.  The other officers had also taken cover behind various objects.  Murphy shined his flashlight in defendant's area.  The laser beam began to move toward Murphy's tree.  Murphy fired three shots toward defendant's area.

Malloch saw defendant sweep the laser beam in the area and then rest it for "a split second" on the pole behind which Walker had taken cover.  Walker saw the laser beam pass across his chest.  Walker shined his flashlight in the area where he saw defendant sitting and yelled to the officers, "he is in the bushes."  Immediately thereafter, the laser beam came back toward Walker and was "pretty steady."  Swan saw the laser beam coming back toward Walker and yelled at him to get down.  Before the laser beam reached him, Walker was able to fire several shots at defendant.  Malloch also fired two shots at defendant.

Bolt or Murphy, or both, then yelled "cease fire," at which point all gunshots ceased.  All of the officers testified that they saw a red laser beam light and muzzle flashes emanating at various times from defendant's direction during this melee.  Several of the officers also testified that defendant had specifi

cally aimed his laser beam at Bolt, Walker, Jones, and Murphy at various times during the pursuit.

When
 
the gunfire ceased, Jones crawled to the bushes and saw defendant lying with a 9-millimeter semiautomatic gun clutched in his left hand.  Jones pried the gun from defendant's hand, ejected the magazine, and removed a second magazine from defen

dant's coat pocket.  Defendant was taken to a hospital, where several bags of cocaine were found in his left sock.

Based upon the foregoing evidence, a jury convicted defendant.  On June 2, 1998, the trial court sentenced defendant to 100 years for the attempted first degree murder of Bolt, 60 years for the attempted first degree murder of Walker, 90 years for aggravated discharge of a firearm, 60 years for armed violence, and 10 years for unlawful possession of a weapon by a felon.  The court ordered the 100-year sentence for the attempted first degree murder of Bolt to be served consecutively to the 60-year sentence for armed violence with all other sentences to be served concurrently.

Defendant thereafter filed a timely motion to reduce sentence.  On September 1, 1998, following a hearing on defendant's motion, the court reduced the sentence for aggravated discharge of a firearm to 45 years and for unlawful possession of a weapon by a felon to 5 years.  This appeal followed. 

II. ANALYSIS

A. Unlawful Possession of a Weapon by a Felon 

To sustain a conviction for the crime of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 1996)), the State must prove beyond a reasonable doubt that defendant (1) knowingly possessed a weapon prohibited by section 24-1 of the Criminal Code (720 ILCS 5/24-1 (West 1996)) or any firearm or any firearm ammunition and (2) has been convicted of a prior felony.  
People v. Smith
, 148 Ill. 2d 454, 464-65, 593 N.E.2d 533, 538 (1992).  The State attempted to prove defendant's prior felony conviction in two steps:  (1) having the court take judicial notice of the felony conviction in Champaign case No. 87-CF-1701, and (2) offering Swan's testimony that he knew defendant in 1987 and was aware that defendant was convicted of a felony in case No. 87-CF-1701.  Defendant argues that (1) the trial court erred in taking judicial notice of the file in case No. 87-CF-1701, and (2)  Swan's testimony, coupled with the court's judicial notice of case No. 87-CF-1701, was insufficient to establish beyond a reasonable doubt that defendant was the person convicted of a felony in No. 87-CF-1701.  We disagree with both contentions.

In Illinois, the traditional method of proving a prior conviction is by the certified record of the prior conviction or an authenticated copy of the conviction, and proof of identity between the name on the record and the defendant on trial.  
People v. Davis
, 65 Ill. 2d 157, 164, 357 N.E.2d 792, 795 (1976).  If the name on the record is identical to the name of the defendant, a rebuttable presumption of identity arises.  
People v. Davis
, 95 Ill. 2d 1, 31, 447 N.E.2d 353, 368 (1983).  If the presumption does not apply or is rebutted, other evidence must be adduced to substantiate that the defendant is the person named in the record of conviction.  
People v. West
, 298 Ill. App. 3d 58, 63, 697 N.E.2d 1216, 1220 (1998).

Judicial notice may be used to prove a prior conviction in place of using the traditional method of proof by record and identity of person.  
Davis
, 65 Ill. 2d at 165, 357 N.E.2d at 796.  In 
Davis
, the supreme court held that the "extension of the doctrine of judicial notice to include facts which, while not generally known, are readily verifiable from sources of indisput

able accuracy is an important aid in the efficient disposition of litigation, and its use, where appropriate, is to be commended."  
Davis
, 65 Ill. 2d at 165, 357 N.E.2d at 796.  This court has also sanctioned the use of judicial notice to prove a prior conviction.  
People v. Scott
, 278 Ill. App. 3d 468, 475, 663 N.E.2d 97, 102 (1996).

Despite the holdings in 
Davis
 and 
Scott
, defendant first argues that judicial notice was inappropriate here because his prior felony conviction was an element of the offense that the State had to prove beyond a reasonable doubt.  In contrast, the prior felony convictions in 
Davis
 and 
Scott
 were relevant only for impeachment of the defendant
.  We disagree.  The quoted principle  in 
Davis
 that "the extension of the doctrine of judicial notice to include facts *** readily verifiable from sources of indisputable accuracy is an important aid in the efficient disposition of litigation" (
Davis
, 65 Ill. 2d at 165, 357 N.E.2d at 796) applies with equal force regardless of the standard of proof required.  Neither the 
Davis
 nor 
Scott
 court conditioned their sanction of the use of judicial notice upon the level of proof required.   

In the instant case, the trial court took judicial notice only of the existence of No. 87-CF-1701 and the fact that it was captioned "People of the State of Illinois versus Derrick White."  Upon defendant's motion, the trial court refused to take judicial notice that No. 87-CF-1701 involved a felony conviction because it would only reiterate Swan's testimony and would prejudicially cause the jury to assume the felony had been proved.  Rather than publishing this to the jury, the court allowed the jury to determine from the testimony of the witnesses whether it was beyond reasonable doubt that the defendant was convicted of a felony in No. 87-CF-1701.  We find no error in the court's judicial notice under these circumstances. 

Defendant also argues judicial notice was inappropriate because of variances between the name in the certified record and defendant's name in this case.  Specifically, the name in the indictment herein is "Derrick S. White," while the name in No. 87-

CF-1701 was at times listed as "Derick" instead of "Derrick" and had the initials "U.S." instead of "S."  Defendant refers to our holding in 
Scott
:  "Under some circumstances, the court may take judicial notice of a conviction and dispense with the formalities that would be required if the defendant denied the conviction had occurred or that he was actually the person convicted."  
Scott
, 278 Ill. App. 3d at 475, 663 N.E.2d at 102, citing 
Davis
, 65 Ill. 2d at 165, 357 N.E.2d at 796.  Defendant suggests that 
Scott
 and 
Davis
 stand for the proposition that the formalities of proof by certified copy of conviction and evidence of identity are required when the defendant disputes or does not concede the felony conviction.  Defendant has misconstrued 
Scott
 and 
Davis
. 

The language in 
Scott
 and 
Davis
 means that judicial notice alone would be insufficient under such circumstances, just as a certified copy of a conviction alone would also be insuffi

cient.  Where a presumption of identity does not exist because of variances in name, or where the defendant rebuts the presumption, the State must, in addition to having the court take judicial notice of the record, offer additional evidence to substantiate that the defendant is the person named in the record.  These are the "formalities" to which the language in 
Scott
 and 
Davis
 refers.  In the instant case, given variances between defendant's name and the name in the record, no presumption of identity existed.  In addition to having the court take judicial notice of the file and caption in No. 87-CF-1701, the State offered the testimony of Swan, as well as other evidence, to substantiate that defendant was the Derrick White convicted of a felony in that case.  Thus, the State fulfilled the requisite formalities. 

Defendant next contends that Swan's testimony, together with the court's judicial notice of No. 87-CF-1701, was insuffi

cient to prove beyond a reasonable doubt that the person convicted of a felony therein was defendant.  We disagree.  The relevant inquiry, after viewing the evidence in the light most favorable to the prosecution, is whether any rational trier of fact could have found that the State proved beyond a reasonable doubt that defendant was the person convicted of a felony in No. 87-CF-1701.  
People v. Eyler
, 133 Ill. 2d 173, 191, 549 N.E.2d 268, 276 (1989).   In response to defendant's motion that Swan's testimony would prejudice the jury, the court ordered Swan to testify first in an offer of proof outside of the presence of the jury.  Swan testified that he was employed as a correctional officer at the Champaign County Correctional Center throughout most of 1987.  In 1987, he met a man named Derrick White.  Swan made an in-court identification of the defendant as the same person.  Swan knew through his various conversations with defendant at the correc

tional center that defendant was charged with armed robbery.  Defendant confided in Swan about problems he was having and that he had contemplated suicide.  Swan further testified that he was still employed at the correctional center when defendant was convicted in No. 87-CF-1701.  Swan testified on cross-examination that he had recently looked up No. 87-CF-1701 and saw that defendant was convicted in that case.  Based upon Swan's testimony, the trial court found that Swan had known defendant for many years and that his testimony was corroborated by the information in the case file.  The court allowed the State, in a limited manner, to ask Swan by leading questions, in the presence of the jury, if he knew Derrick White to be the defendant and if he knew Derrick White to be convicted of a felony in No. 87-CF-1701. 

As the State points out in its brief, and as defendant has apparently overlooked, Swan's testimony was not the only evidence the State offered on this issue.  The State also offered the testimony of Janice Jones, the clerk at Motel 6.  Jones testified that defendant signed a motel receipt when he checked in.  The motel receipt, which was admitted into evidence, shows that defendant signed it as Derrick White.  The State also admitted into evidence defendant's wallet, which contained a driver's license and identification card bearing the name "Derick U. White."  

We conclude that Swan's testimony, together with the testimony of Janice Jones, defendant's driver's license and identification card, and the court's judicial notice of No. 87-CF-

1701, provided a sufficient basis upon which any rational trier of fact could have found that, in 1988, defendant was convicted of a felony in No. 87-CF-1701.  Although defendant raises various faults in Swan's testimony, including that (1) when Swan looked up No. 87-

CF-1701 on the computer, he never checked to see if any information other than the name, such as the social security number, Federal Bureau of Investigation number, or "IR" number, matched defen

dant's; (2) Swan thought defendant's birth date was October 7, 1970, when it apparently was October 3, 1970; and (3) Swan had not seen defendant in 10 years, we find these alleged faults do not create reasonable doubt.

We note that the State urges us to adopt the rule of 
idem
 
sonans
 to establish a presumption of identity between the person named in No. 87-CF-1701 and defendant.  That rule provides that even given a variance in the spelling of two names, if the correct pronunciation of the two names results in practically identical sounds, the names are held to designate the same person.  See 
People v. Lomax
, 126 Ill. App. 2d 156, 164-65, 262 N.E.2d 63, 67 (1970).  However, we need not decide whether 
idem
 
sonans
 creates a presumption of identity here because, as we have discussed, the State provided sufficient evidence of defendant's prior felony conviction even absent a presumption of identity.

B. Attempt (First Degree Murder of a Peace Officer) and 

Aggravated Discharge of a Firearm

The material in this section is nonpublishable and nonprecedential under Supreme Court Rule 23 (166 Ill. 2d R. 23).  
[Nonpublishable material removed under Supreme Court Rule 23. 
(166 Ill. 2d R. 23).]

C. Cross-Examination of Murphy Regarding Suspension

The material in this section is nonpublishable under Rule 23.  

[Nonpublishable material removed under Supreme Court Rule 23.]

D. IPI Criminal 3d No. 3.11

The material in this section is nonpublishable under Rule 23.

[Nonpublishable material removed under Supreme Court Rule 23.]

E. Hundred-Year Sentence for Attempt (First Degree Murder 

of a Peace Officer) and Forty-Five-Year Sentence 

for Aggravated Discharge of a Firearm

Defendant contends that his 100-year sentence for attempt (first degree murder of a peace officer) and 45-year sentence for aggravated discharge of a firearm must be reduced to the statutory limits existing prior to the enactment of Public Act 88-680.  Public Act 88-680 amended section 8-4(c)(1) of the Criminal Code to increase the sentencing range for attempt (first degree murder of a peace officer) from 15 to 60 years to 20 to 80 years, and for aggravated discharge of a firearm from 6 to 30 years to 10 to 45 years.  Defendant contends that Public Act 88-680 violates the single subject rule of the Illinois Constitution.  With respect to the 100-year sentence, he argues that even if this court does not agree that Public Act 88-680 is unconstitutional, his sentence must be reduced to 80 years under our decision in 
People v. Boatman
, 303 Ill. App. 3d 589, 593, 708 N.E.2d 520, 523 (1999). 

We previously held in 
Boatman
, 303 Ill. App. 3d at 594, 708 N.E.2d at 524, that Public Act 88-680 does not violate the single subject rule.  However, the supreme court has recently held in 
People v. Cervantes
, No. 87229, slip op. at 8 (December 2, 1999), ___ Ill. 2d ___, ___, ___ N.E.2d ___, ___, that Public Act 88-680 violates the single subject rule and is unconstitutional.  To the extent that 
Boatman
 holds otherwise, it is now overruled.  In accordance with 
Cervantes
, we vacate the 100-year sentence for the attempt (first degree murder) of Bolt and the 45-year sentence for aggravated discharge of a firearm and remand to the trial court to impose new sentences within the sentencing ranges existing for those offenses prior to the enactment of Public Act 88-680.

F. One-Act, One-Crime Rule

Defendant argues his convictions for unlawful possession of a weapon by a felon and armed violence based on illegal possession of a controlled substance were carved out of the same physical act.  He contends that under the one-act, one-crime doctrine first espoused by our supreme court in 
People v. King
, 66 Ill. 2d 551, 559-66, 363 N.E.2d 838, 841-45 (1977), his conviction for unlawful possession of a weapon by a felon must be vacated.  

The State contends that defendant forfeited this argument by failing to raise it in his motion to reduce sentence.  We choose to address the argument, however, under the plain error doctrine because defendant's conviction and sentence for unlawful possession of a weapon by a felon affect his substantial rights.  
People v. Smith
, 183 Ill. 2d 425, 430, 701 N.E.2d 1097, 1099 (1998).

Turning to the merits, the 
King
 doctrine provides that a defendant's conduct cannot result in multiple convictions if the convictions are based on precisely the same physical act and any of the offenses are included offenses.  
King
, 66 Ill. 2d at 566, 363 N.E.2d at 844.  The supreme court reaffirmed the 
King
 doctrine in 
People v. Rodriguez
, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 307 (1996).  Analysis under the 
King
 doctrine requires two steps.  First, the court must determine whether a defendant's conduct consisted of separate acts or a single physical act.  
Rodriguez
, 169 Ill. 2d at 186, 661 N.E.2d at 306.  The 
definition of "act" remains that which the supreme court stated in 
King
, 66 Ill. 2d at 566, 363 N.E.2d at 844-45:  "any overt or outward manifestation which will support a different offense."  If only one physical act was undertaken, multiple convictions arising out of that single act are improper.  If separate acts were undertaken, the court must ask next whether any of the offenses are included offenses.  Convic

tions for included offenses are improper.  
Rodriguez
, 169 Ill. 2d at 186, 661 N.E.2d at 306-07. 

Defendant relies primarily on 
People v. Williams
, 302 Ill. App. 3d 975, 707 N.E.2d 980 (1999), a case decided by the Second District Appellate Court, as authority that his convictions for unlawful possession of a weapon by a felon and armed violence were borne out of the same physical act.  In 
Williams
, the defendant was arrested during a traffic stop because  of a warrant for his arrest.  During the arrest, the arresting officer found a gun and a baggie containing nine rocks of cocaine in the car seat.  Defendant was convicted of and sentenced to concurrent terms of 18 years' imprisonment for armed violence based on possession of a controlled substance and 10 years' imprisonment for unlawful possession of a weapon by a felon.  The second district found that the two convictions were borne out of the common act of a felon possessing a gun and drugs simultaneously.  "In one instance the gun is combined with possession of a controlled substance to constitute armed violence, and in the other it is combined with the act of a convicted felon status to create a separate offense."  
Williams
, 302 Ill. App. 3d at 978, 707 N.E.2d at 982.  Accordingly, the court reversed the separate conviction for unlawful possession of a weapon by a felon and vacated the sentence.  
Williams
, 302 Ill. App. 3d at 978, 707 N.E.2d at 982.

Because we conclude 
Williams
 was wrongly decided, we reject defendant's argument and decline to reverse his conviction for unlawful possession of a weapon by a felon.  The 
Williams
 court found it significant that the defendant's possession of the gun and the drugs was simultaneous.  The court held that the simultaneous nature of the possession rendered it one common act.  The 
Williams
 court also found it significant that the possession of the gun was common to both convictions.  Neither of these findings properly supports the conclusion in 
Williams
.  

First, though simultaneous, defendant's possession of the gun was an act distinct from defendant's possession of the drugs.  See 
People v. Green
, 199 Ill. App. 3d 927, 932, 557 N.E.2d 939, 942 (1990) (possession of drugs in right-hand pocket was act distinct from simultaneous possession of drugs in left-hand pocket, and each could support conviction for separate offense).  Two separate acts do not become one solely by virtue of being proximate in time.
  See 
People v. Myers
, 85 Ill. 2d 281, 288-89, 426 N.E.2d 535, 538 (1981) (two cuts with knife to same victim, though close in time, were not one physical act); 
People v. Dixon
, 91 Ill. 2d 346, 355-56, 438 N.E.2d 180, 185 (1982) (separate blows to same victim, though closely related in time, were not one physical act); 
People v. Segara
, 126 Ill. 2d 70, 78, 533 N.E.2d 802, 805 (1988) (two acts of criminal sexual assault upon same victim occurring with little or no break between were not one physical act).

Second, the fact that the defendant's possession of the gun was common to both convictions in 
Williams
 is not dispositive.  In 
Rodriguez
, the supreme court emphasized that "'[a] person can be guilty of two offenses when a common act is part of both of

fenses.'"  
Rodriguez
, 169 Ill. 2d at 188, 661 N.E.2d at 308, quoting 
People v. Lobdell
, 121 Ill. App. 3d 248, 252, 459 N.E.2d 260, 263 (1983).  In 
Rodriguez
, the defendant was charged with the offenses of aggravated criminal sexual assault and home invasion.  The aggravated criminal sexual assault count alleged that the defendant committed an act of sexual penetration and displayed or threatened the victim with a gun.  The home invasion count alleged that defendant unlawfully entered the victim's dwelling and threatened her with imminent use of force while armed with a gun.  The supreme court found that while these offenses shared the common act of the defendant threatening the victim with a gun, they were based on separate acts.  "'As long as there are multiple acts 
as
 
defined
 
in
 
King
, their interrelationship does not preclude multiple convictions ***.'  (Emphasis added.)"  
Rodriguez
, 169 Ill. 2d at 189, 661 N.E.2d at 308, quoting 
Myers
, 85 Ill. 2d at 288, 426 N.E.2d at 538.  Accordingly, we conclude that 
Williams
 was wrongly decided.

Under the 
King
 doctrine, as analyzed in 
Rodriguez
, we conclude that defendant's convictions for armed violence and unlawful possession of a weapon were based on separate acts.  Though defendant may have possessed the weapon and the drugs close in time, or even simultaneously, we conclude nevertheless that each possession was a separate act.  Although both offenses shared the common act of possession of a weapon, armed violence required the additional act of possession of the drugs, and unlawful possession of a weapon by a felon required the additional element of status as a felon.  Accordingly, the two offenses did not result from precisely the same physical act. 

Having found that multiple acts were committed, we must next determine whether either offense is an included offense of the other.  To qualify as an included offense, the instrument charging the greater offense must, at a minimum, set out the main outline of the lesser offense.  
People v. McLaurin
, 184 Ill. 2d 58, 104-05, 703 N.E.2d 11, 33 (1998).  In the instant case, the information charging the offense of unlawful possession of a weapon by a felon states as follows:

"That on December 2, 1997, in Champaign County, Derrick S. White committed the offense of UNLAWFUL POSSESSION OF WEAPONS BY FELON, CLASS 3 FELONY, in that the said defendant, a person who has been convicted of a felony under the law of Illinois, namely, armed robbery, in the Circuit Court of Champaign County, Illinois, in case [No.] 87-CF-1701, knowingly possessed on or about his person a firearm, namely, a handgun, in violation of 720 Illinois Compiled Statutes 5/24-1.1(a)."

This charge fails to set out an essential element of armed violence, 
i.e.
, that defendant was simultaneously committing a felony.  720 ILCS 5/33A-2 (West 1996).  The information charging  armed violence states as follows:

"That on December 2, 1997, in Champaign County, Derrick S. White committed the offense of ARMED VIOLENCE--CLASS X FELONY in that the said defendant, while armed with a dangerous weapon, a pistol, performed acts prohibited by Illinois Compiled Statutes, Chapter 720, Act 570/402 in that the defendant did knowingly and unlawfully possess a substance containing cocaine, a controlled substance, other than as authorized in the Controlled Substances Act, in violation of 720 Illinois Compiled Statutes 5/33(A)-2."

This charge fails to set out an essential element of unlawful possession of a weapon by a felon, 
i.e.
, that defendant was previously convicted of a felony.  720 ILCS 5/24-1.1(a) (West 1996).  Accordingly, neither offense is an included offense of the other and both convictions may stand.

 G. Section 5-8-4(c)(2) of Corrections Code

The material in this section is nonpublishable under Rule 23.  

[Nonpublishable material removed under Supreme Court Rule 23.]

H.  Abuse of Sentencing Discretion

The material in this section is nonpublishable under Rule 23.  

[Nonpublishable material removed under Supreme Court Rule 23.]

I. Juror Misconduct

The material in this section is nonpublishable under Rule 23.  

[Nonpublishable material removed under Supreme Court Rule 23.]

III. CONCLUSION 

For the foregoing reasons, we vacate the 100-year sentence for the attempt (first degree murder) of Bolt and the 45-

year sentence for aggravated discharge of a firearm, and remand to the trial court for imposition of new sentences within the sentencing ranges
 existing prior to the enactment of Public Act 88-

680.  The trial court's judgment is affirmed in all other respects.

Affirmed in part and vacated in part; cause remanded with  directions.

STEIGMANN and MYERSCOUGH, JJ., concur.