2021 IL App (1st) 191314-U

No. 1-19-1314

FIFTH DIVISION
JUNE 30, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 12569 |
| | ) | |
| NATE MANNING, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's aggravated unlawful use of a weapon convictions are vacated where the evidence was insufficient to prove he lacked a current Firearm Owners Identification card. Defendant's unlawful use or possession of a weapon by a felon convictions are affirmed where the evidence was sufficient to establish he possessed the recovered contraband.

¶ 2     Following a bench trial, the defendant Nate Manning was found guilty of three counts of aggravated unlawful use of a weapon (AUUW) and two counts of unlawful use or possession of a weapon by a felon (UUWF) and sentenced to concurrent prison terms of four years on the AUUW counts and three years on the UUWF counts. On appeal, the defendant argues that we should

reverse all his convictions because the evidence regarding possession was implausible. The defendant also challenges his UUWF convictions because the evidence did not prove that he was previously convicted of a felony, and he also contests his AUUW convictions because the evidence did not prove he lacked a current Firearm Owners Identification (FOID) card; alternatively, he asks that we reduce the convictions for AUUW from Class 2 to Class 4 offenses because the State failed to establish that he had a prior felony conviction. The defendant argues that the one-act, one-crime doctrine requires us to vacate two AUUW convictions and one UUWF conviction because the evidence established that he possessed a single firearm. For the following reasons, we affirm in part and vacate in part.

¶ 3                              BACKGROUND

¶ 4    Defendant was charged by information with six counts of AUUW and two counts of UUWF in relation to an incident on May 18, 2012. The State proceeded on counts III, IV, and VI for AUUW, and counts VII and VIII for UUWF.

¶ 5    Count III for AUUW alleged that the defendant knowingly carried a firearm on or about his person while not on his land or in his abode or fixed place of business, and he had not been issued a currently valid FOID card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2012)). Count IV for AUUW alleged the defendant knowingly carried a firearm in a vehicle while not on his land or in his abode or fixed place of business and he had not been issued a currently valid FOID card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2012)). Count VI for AUUW alleged that the defendant knowingly carried or possessed a firearm on or about his person upon a public street in Chicago when he was not on his land or in his abode or fixed place of business, and he was not an invitee thereon for the purpose of display of such weapon or the lawful commerce in weapons, and he had

not been issued a currently valid FOID card (720 ILCS 5/24-1.6(a)(2), (a)(3)(C) (West 2012)). These counts sought to sentence defendant as a Class 2 offender in that he had previously been convicted of felony attempt burglary.

¶ 6    Count VII for UUWF alleged that the defendant knowingly possessed a handgun on or about his person after having been previously convicted of the felony offense of attempt burglary (720 ILCS 5/24-1.1(a) (West 2012)). Count VIII for UUWF alleged that the defendant knowingly possessed bullets on or about his person after having been previously convicted of the felony offense of attempt burglary (720 ILCS 5/24-1.1(a) (West 2012)).

¶ 7    On the day of trial, the trial court granted the State leave to amend the charging document by, *inter alia*, adding an alias of "Shawn Walker" to each count.

¶ 8    Chicago police officer Robert Quintero testified that on May 18, 2012, he received a call describing disturbances at a "gang funeral." Officer Quintero parked his marked squad vehicle, a "bigger" Chevy Tahoe, half a block from the cemetery's entrance. At around 1:39 p.m., while sitting up high in his vehicle monitoring the funeral procession, Officer Quintero observed a silver four-door Mercedes automobile in the funeral procession. The Mercedes had two occupants, a driver and front passenger. In court, Officer Quintero identified the defendant as the front passenger. The defendant held a beer. Officer Quintero also observed a blue steel handgun at the defendant's feet, which the defendant tried to cover by moving and "twitching" his feet over it.

¶ 9    Officer Quintero followed the Mercedes and activated his emergency lights before exiting his vehicle. When he approached the driver's door of the Mercedes, it "sped off." Officer Quintero entered his vehicle, followed the Mercedes, and put out a radio dispatch. Officer Quintero trailed the Mercedes until it drove through the gates of a railroad crossing while Officer Quintero stopped

for the passing train. After the defendant was in custody, Officer Quintero went to the 10600 block of South Maplewood Avenue in Chicago, where he identified the handgun from the Mercedes.

¶ 10    On cross-examination, Officer Quintero testified that there was about a foot between the driver's side door of his vehicle and the funeral procession. The Mercedes model was "lower," and he believed the windows were down.  The defendant weighed around 240 or 260 pounds and the firearm had a three-inch barrel. Officer Quintero testified that he was alone when he approached the Mercedes but could not recall whether he had his firearm drawn or if his radio dispatch noted he observed a firearm in the Mercedes. Officer Quintero's arrest report mentioned the beer, but not that the defendant held it.

¶ 11    Chicago police officer Steve Sawicki testified that around 1:45 p.m. on May 18, 2012, he received a radio transmission about another unit pursuing a silver Mercedes that fled a traffic stop. Officer Sawicki drove until he saw a silver Mercedes driving "pretty fast" through railroad gates. At some point the Mercedes slowed and turned onto Maplewood Avenue, then into an alley. When Officer Sawicki was about 25 feet behind the Mercedes, the front passenger threw a firearm out of the window. Officer Sawicki followed the Mercedes until it eventually "conked out" after sustaining damage from driving through the railroad gates. Officer Sawicki then arrested the defendant. Additional police units arrived and Officer Sawicki went back to the 10600 block of Maplewood Avenue to look for the discarded firearm, which was recovered in grass near a telephone pole. On cross-examination, Officer Sawicki could not recall if he announced over the police radio that he observed something thrown from the Mercedes.

¶ 12    Chicago police detective Michael Madden testified that around 1:39 p.m. on May 18, 2012, he responded to a call that a Mercedes fled a traffic stop. Following a conversation with officers

on the scene, Officer Madden searched the 10600 block of Maplewood Avenue and recovered a loaded blue steel 9-millimeter weapon from a grassy area next to an alley. He did not find other weapons or objects the same size as the recovered weapon.

¶ 13    On cross-examination, Officer Madden testified that Officer Sawicki told him that something was thrown from the Mercedes and where to look for it. Officer Sawicki did not describe the item except that he believed it was a weapon. Officer Madden acknowledged he authored an incident report indicating that the firearm was recovered on the 10600 block of Maplewood Avenue in the alley next to a telephone pole and did not state that it was recovered in a grassy area.

¶ 14    Chicago police officer Thomas Kocanda testified that on September 14, 2001, he arrested, fingerprinted, and processed an individual who used the name Shawn Walker and a date of birth of October 28, 1978. In court, Officer Kocanda identified that individual as the defendant. Officer Kocanda sent the defendant's fingerprints to "identification" and later learned they were already in the system under a certain "IR" number.[1] Officer Kocanda explained that fingerprints are assigned unique IR numbers, and when a suspect with an existing IR number is arrested under a different name than the one in the system, the new name is added as an alias to the previously assigned IR number. Officer Kocanda processed the defendant under the name Shawn Walker with the provided date of birth.

¶ 15    On cross-examination, Officer Kocanda testified that the defendant reported his height as 5'9" and his weight as 220 pounds, and Officer Kocanda recorded that the defendant had a tattoo

---

[1] An IR number is a unique identification number assigned to an arrestee based on his fingerprints.

"Deshawn." The arrest report Officer Kocanda authored did not include photographs of the defendant. There were several aliases and dates of birth listed in defendant's Chicago Police Department Criminal History Report.

¶ 16    On redirect examination, when asked if the defendant was Shawn Walker, Officer Kocanda testified, "He still has the same beard, that I remember." Officer Kocanda further testified that the 2001 arrest was "pretty unique" in that Officer Kocanda had responded to an in-progress theft of a vehicle using a tow truck, chased the defendant, had a "physical tussle" with him, and then processed the defendant at the station. These interactions allowed Officer Kocanda to view the defendant closely. Officer Kocanda testified it was "very common" for an individual to have multiple aliases and dates of birth listed in the system.

¶ 17    On recross-examination Officer Kocanda testified that he believed the defendant was bald at the time of the 2001 arrest. Officer Kocanda acknowledged that a written report following the incident noted that the offender had braided hair and did not mention facial hair.

¶ 18    The State entered into evidence, a certified statement of conviction providing that on September 21, 2001, Shawn Walker pled guilty to attempt burglary.

¶ 19    The defendant entered into evidence, an aerial map identified as showing where the handgun was recovered and the path of the Mercedes's flight, as well as a copy of a City of Chicago Department of Emergency Management and Communications (OEMC) "event query" for the incident with a certificate of authenticity signed by an OEMC employee. The event query does not mention a firearm.

¶ 20    The trial court found the defendant guilty on all counts. In doing so, the court found the officers credible and the circumstantial evidence "strong." Specifically, Officer Sawicki said his

vehicle was 20 feet from the Mercedes in which the defendant rode, a "very close" distance, and it was "absolutely believable" that as the Mercedes turned, Officer Sawicki saw an arm emerge from the window and toss a weapon.

¶ 21    The defendant filed a motion for a new trial or judgment of acquittal, which the trial court denied. Following a hearing, the court sentenced the defendant to concurrent terms of four years' imprisonment on counts III, IV, and VI for AUUW (Class 2 offenses), and three years' imprisonment on counts VII and VIII for UUWF (Class 3 offenses). The defendant filed a post-trial motion which the trial court denied. The defendant was sentenced on May 31, 2019. The record does not show that the defendant filed a motion to reconsider sentence. A timely notice of appeal was filed.  Therefore, this court has jurisdiction to resolve this appeal.

¶ 22                                        ANALYSIS

¶ 23    On appeal, the defendant first argues that we should reverse all his convictions because the evidence regarding possession of the gun was unbelievable and implausible. He also claims that the evidence did not prove he had a prior felony conviction for purposes of the UUWF conviction, or that he lacked a current FOID card for purposes of the AUUW conviction.

¶ 24    When reviewing a challenge to the sufficiency of the evidence, a reviewing court considers "whether, viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). Pursuant to this standard, a reviewing court must allow all reasonable inferences in favor of the State. *People v. Harris*, 2018 IL 121932, ¶ 26. The reviewing court will not retry the defendant (*id.*) or "substitute its judgment for that of the fact finder on questions involving the

weight of the evidence or the credibility of the witnesses" (*People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009)). A conviction will only be reversed where the evidence is "so unreasonable, improbable, or unsatisfactory" that it creates a reasonable doubt as to the defendant's guilt. *Wheeler*, 226 Ill. 2d at 115.

¶ 25    In this case, the defendant challenges the sufficiency of the evidence for his AUUW and UUWF convictions. As charged, a person commits AUUW when he knowingly carries a firearm on or about his person or in any vehicle or concealed on or about his person except when on his land or in his abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, and he has not been issued a currently valid FOID card. 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2012). A person also commits AUUW when he knowingly carries or possesses a firearm on or about his person upon any public street, alley, or other public lands within the corporate limits of a city, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or in his abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, and he has not been issued a currently valid FOID card. 720 ILCS 5/24-1.6(a)(2), (a)(3)(C) (West 2012). A person commits UUWF when he knowingly possesses a firearm or firearm ammunition on or about his person or on his land or in his abode or fixed place of business and he has previously been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2012).

¶ 26    The State concedes that we should vacate the defendant's AUUW convictions because the evidence was insufficient to prove he lacked a currently valid FOID card at the time of the offense. The State did not present any evidence to support this element of the offense, and therefore, we

agree with the parties that the defendant's AUUW convictions must be vacated. Because we vacate the defendant's AUUW convictions, we need not address his alternate contention regarding whether his conviction violates the principle of one-act, one-crime. We therefore limit our analysis to the defendant's remaining contentions regarding his UUWF convictions.

¶ 27    The defendant asserts that the evidence establishing his possession of the firearm comprised uncorroborated, partially impeached, unbelievable, and implausible police testimony. He notes that he never made an inculpatory statement, and the State did not introduce the recovered handgun and bullets, photographs of these items, or forensic evidence establishing that he touched them.

¶ 28    Whether a defendant possessed contraband is a factual issue, and we will not disturb the findings of the trial court unless the evidence is so unbelievable that it creates a reasonable doubt as to the defendant's guilt. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27. "Actual possession is proved by testimony that the defendant exercised some form of dominion over the [contraband], such as that he had it on his person, tried to conceal it, or was seen to discard it." *Id.*

¶ 29    We find the evidence established that the defendant possessed the recovered handgun and bullets. Officer Quintero testified that while sitting high up in his police vehicle and monitoring a funeral procession about a foot away, he saw the defendant in the passenger seat of a passing, Mercedes automobile which was much lower than the Officer's vehicle. At the defendant's feet lay a blue steel handgun, which the defendant attempted to cover with his feet. When Officer Quintero activated his emergency lights, pulled up behind the Mercedes, and approached on foot, the Mercedes fled. See *People v. Ross*, 2019 IL App (1st) 162341, ¶ 32 (noting that a defendant's flight from police demonstrates consciousness of guilt). Officer Sawicki joined the

pursuit of the Mercedes, and after the Mercedes drove into an alley, he saw the front passenger throw something out of the window. Detective Madden went to the area where Officer Sawicki had seen the defendant toss the item and recovered a loaded blue steel handgun. Officer Quintero identified the gun recovered by Detective Madden as the one he saw at the defendant's feet immediately before he tried to stop the Mercedes. Thus, the testimony presented by the State provided ample evidence for the trial court to infer that the defendant actually possessed the recovered handgun and bullets. See *Jones*, 2019 IL App (1st) 170478, ¶ 27; *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) ("[T]he testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant.").

¶ 30    Still, the defendant takes issue with several parts of this testimony. For example, he notes that Officer Quintero could not remember if he announced by radio that he saw a firearm. Additionally, although Officer Quintero testified that the defendant held a beer, the officer did not include that detail in his arrest report. The defendant also asserts that Officer Quintero's testimony that he could see the handgun at the defendant's feet defied common sense based on the officer's vantage point and the defendant's size relative to the handgun. The defendant contends that Officer Sawicki's testimony was equally incredible in that the defendant knew police were closely trailing him, yet he was said to have thrown a firearm out of the car window, in plain view.

¶ 31    Essentially, the defendant is asking us to retry the case on appeal. This we cannot do. See *Harris*, 2018 IL 121932, ¶ 26. The defendant's arguments address credibility determinations, inferences drawn from the evidence, and the resolution of conflicts in the evidence. These are all matters "within the province of the trier of fact," and "a reviewing court will not substitute its judgment for that of the trier of fact []." *People v. Simpson*, 2015 IL App (1st) 130303, ¶ 44. The

trial court expressly found the officers credible, and we find nothing in their testimony so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt as to the defendant's guilt such as to justify disturbing those findings. See *id.*

¶ 32     The defendant next argues that the evidence was insufficient to prove he was previously convicted of a felony because the certified copy of conviction entered by the State named "Shawn Walker" as the offender, and Officer Kocanda's identification of the defendant as the offender in that case was "questionable."

¶ 33     "In Illinois, the traditional method of proving a prior conviction is by the certified record of the prior conviction or an authenticated copy of the conviction, and proof of identity between the name on the record and the defendant on trial." *People v. White*, 311 Ill. App. 3d 374, 380 (2000) (citing *People v. Davis*, 65 Ill. 2d 157, 164 (1976)). Generally, "identity of name gives rise to a rebuttable presumption of identity of person." *People v. Davis*, 95 Ill. 2d 1, 31 (1983). Thus, where the name on the certified copy of conviction is the same as the name of the defendant, the State may meet its burden of proof through the certified copy of conviction and is not required to produce additional evidence that the defendant is the same person convicted in the prior case. See *People v. Smith*, 148 Ill. 2d 454, 465 (1992). However, where, as here, the name on the certified copy of conviction is not the same as the defendant's, "other evidence must be adduced to substantiate that the defendant is the person named in the record of conviction." *People v. West*, 298 Ill. App. 3d 58, 63 (1998).

¶ 34     The defendant argues that Officer Kocanda's testimony identifying him as the person whom Officer Kocanda arrested and processed on September 14, 2001, under the name Shawn Walker, was questionable given officer Kocanda's "inaccurate description of the appearance of

the offender he arrested." In particular, the defendant points to Officer Kocanda's testimony that the offender was bald, while his written report described the offender as having braided hair, and no evidence was presented at trial that the defendant had the same "Deshawn" tattoo which Officer Kocanda saw on the offender whom he arrested in 2001.

¶ 35 However, Officer Kocanda identified the defendant in court as the individual he arrested, fingerprinted, and processed in the 2001 offense outlined in the certified copy of conviction. In identifying the defendant as that offender, Officer Kocanda noted that the defendant still had the same beard. Officer Kocanda further described the unique circumstances of the arrest that caused him to remember the defendant as the offender. The officer also explained how suspects commonly use multiple aliases and dates of birth. That explanation allowed the trier of fact to infer that it was not uncommon for offenders to use multiple names. Therefore, a rational trier of fact could have found Officer Kocanda's testimony sufficient to establish the defendant's prior felony conviction.

¶ 36                                    CONCLUSION

¶ 37 For the foregoing reasons, we affirm the defendant's UUWF convictions and vacate his AUUW convictions.

¶ 38 Affirmed in part; vacated in part.