THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH L. HESTAND, Defendant-Appellant.

Fourth District    No. 4—03—0801

Opinion filed November 4, 2005.

COOK, P.J., specially concurring in part and dissenting in part.

Daniel M. Kirwan and Paige Clark Strawn, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Barry Schaefer, State's Attorney, of Toledo (Norbert J. Goetten, Robert J.

Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE TURNER delivered the opinion of the court:

In May 2001, the State charged defendant, Kenneth L. Hestand, with two counts of criminal sexual assault and two counts of aggravated criminal sexual abuse. In July 2003, a jury found defendant guilty on three counts. In August 2003, the trial court imposed a 15-year prison sentence on the criminal-sexual-assault conviction and concurrent 7-year terms on the aggravated-criminal-sexual-abuse convictions.

On appeal, defendant argues (1) his aggravated-criminal-sexual-abuse conviction for fondling the victim's vagina must be vacated pursuant to the one-act, one-crime rule, (2) he was denied a fair trial when a witness read defendant's statement to police to the jury, and (3) the trial court improperly considered multiple victim-impact statements and imposed an excessive sentence. We affirm in part, vacate in part, and remand with directions.

## I. BACKGROUND

In May 2001, the State charged defendant with two counts of criminal sexual assault (720 ILCS 5/12—13(a)(1), (a)(2) (West 2000)), alleging he committed an act of sexual penetration with T.H. in that by the use of force he placed his penis in her vagina (count I) and knowing that T.H. was unable to give knowing consent he committed an act of sexual penetration by placing his penis in her vagina (count II). The State also charged defendant with two counts of aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1)(ii) (West 2000)), alleging defendant, over the age of 17, committed an act of sexual conduct with T.H., at least 13 years of age but under 17 years of age, in that he knowingly and by the use of force fondled T.H.'s vagina for the purpose of his sexual arousal (count III) and knowingly and by the use of force fondled T.H.'s breast for the purpose of his sexual arousal (count IV). Defendant pleaded not guilty.

In July 2003, defendant's jury trial commenced. T.H. testified she knew defendant through Delores Marrow, the sister of her guardian's husband. On May 12, 2001, T.H. was asleep on the couch when defendant knocked on the door and asked for Marrow. Defendant then asked about the best place to eat, and T.H. made a suggestion but declined an invitation to go with him. After defendant left, T.H. went back to sleep. Later, T.H. walked to a festival in Greenup. Defendant drove up and asked T.H. where the best place to go fishing was. T.H. tried to give him directions and later told him she would show him if

he bought her a pack of cigarettes. T.H. entered the van and they headed west. Defendant had her "duck" whenever he passed certain apartments, but T.H. did not find that unusual. They eventually ended up "underneath the bridge" and both exited the van. After pointing out a fishing spot, defendant told T.H. she was beautiful and that when she turned 18 he would take her away and marry her. T.H. was shocked and turned around to walk back to the van. Defendant then grabbed her arm and pulled her toward him. He then started hugging and kissing her. T.H. pulled away and started running. She tried to run up the hill but changed directions and tried to go to the van.

T.H. testified defendant unlocked the van and she got in the front seat. Defendant started to fondle her breasts. He then pulled down her pants and underwear. Defendant undid his pants and said, " 'See what you did?' " T.H. glanced down and noticed "his penis was hard." Defendant told her to touch his penis, but she refused. He then grabbed her hand, put it on his penis, and "started moving [her] hand back and forth." She then jerked her hand away. Thereafter, defendant placed his penis in her vagina "for a couple of minutes." T.H. attempted to fight and tried to pull up her pants. Defendant kept pulling her pants down and said she would never see her family again. T.H. told him she was going to tell, and he said, " 'Oh, well' " and told her not to shave her vagina. T.H. stated she never saw defendant ejaculate and he had trouble maintaining an erection. Thereafter, defendant drove to Dairy Queen to eat and to the gas station for cigarettes. Defendant gave her one pack and said for the second one she had to give him a "blow job." T.H. refused, and defendant dropped her off at the municipal building. T.H. could not find her friends and started looking for a police officer.

Special Agent Al Duncan of the Illinois State Police testified he interviewed T.H. and defendant. Agent Duncan stated T.H. was "upset," "crying," and "nervous." After T.H. stated defendant grabbed her arm, Agent Duncan noticed a bruise on her inside right biceps area. Defendant told him he took T.H. to Dairy Queen for something to eat and then dropped her off near the police station in Greenup. Defendant denied being at the bridge area. When Duncan told defendant tire tracks matching his van had been found near the area, defendant said he may have been out there the previous week. After Duncan said it had rained since then, defendant said he may have been out there earlier that day but he could not remember for sure. Defendant denied having sex with T.H. and stated it was difficult for him to achieve an erection because he had prostate problems. Duncan told him T.H. was at the hospital and an analysis could determine

if they engaged in sex. Duncan testified he misinformed defendant as to the tire tracks, the rain, and the analysis at the hospital "as it was an interrogation technique to try to elicit truthful information from a person."

Defendant wanted to know whether T.H. stated the sex was consensual, and Duncan said she claimed defendant raped her. Defendant then stated the sex was consensual. Defendant told Duncan he was unable to maintain an erection, he did not get any satisfaction out of it, and "he did the best he could in his sexual performance but that he could not get, in his words, a [']hard on['] and did not ejaculate." Defendant then agreed to write a voluntary statement. Duncan read the statement to the jury:

> "I, K.L. Hestand, had sex with [T.H.]. And she started it. She wanted it. Asked for it. So we went to a place she knowed [*sic*], and it was on a river. We had sex in the passenger seat of the vehicle. She say I'm no good because I could not get [']hard on.['] And I did try the best I could. I did not get any satisfaction out of it."

Bill Cline, the Greenup chief of police, testified he found T.H. sitting on the sidewalk crying. He verified her age as being 16 and later took her to find the suspect and his vehicle. Cline then asked defendant, age 65, to come down to the police department to clear up the alleged accusation.

Delores Marrow testified as a defense witness. She stated she had an intimate relationship with defendant. In May 2001, defendant had been treated for a blood clot in his leg. Marrow testified defendant was impotent "sometimes but not always."

Defendant testified he would often take T.H. to the store to buy food and cigarettes because her family did not have any money. On May 12, 2001, defendant went to T.H.'s house to see if Marrow was there. Later, T.H. came down to Marrow's trailer and asked defendant to buy her food and drop her off at home. Defendant bought her a pack of cigarettes and dropped her off at police headquarters. Later, defendant went to the police station after being contacted by the police. Defendant testified he never told Agent Duncan he had sex with T.H. although "she would try to hit on" him. Defendant stated he had prostate problems and he had not "had sex in a long time on account of it." Defendant denied having sex with T.H. He also stated he did not fondle her vagina or breasts because she "looks nasty" and he did not like "nasty women." Defendant testified his written statement was untrue and he wrote it because Agent Duncan said that would " 'be the end of it.' " On cross-examination, defendant stated

he confessed to something he did not do because he "was sick," he did not have his medicine, and the police officer was lying to him.

After redirect examination, the State informed the jury that defendant had been convicted of child molestation in Indiana in 1981. Following closing arguments, the jury found defendant guilty of criminal sexual assault (count I) and aggravated criminal sexual abuse (counts III and IV).

In August 2003, the trial court conducted defendant's sentencing hearing. The court considered the evidence in aggravation and mitigation and gave the appropriate weight to the unsworn victim-impact statements from the victim and her foster mother. The court sentenced defendant to 15 years in prison on count I and concurrent 7-year terms on counts III and IV. This appeal followed.

## II. ANALYSIS

### A. One-Act, One-Crime Rule

■ Defendant argues his conviction for aggravated criminal sexual abuse (count III) must be vacated under the one-act, one-crime rule because it was based on the same physical act as his criminal-sexual-assault conviction. The State argues two offenses were carved from two separate acts. We agree with the State.

Initially, we note defendant did not raise this issue in a posttrial motion. Thus, defendant has forfeited this issue on appeal. *People v. Smith*, 183 Ill. 2d 425, 429-30, 701 N.E.2d 1097, 1099 (1998). However, even though defendant has forfeited his claim of error, "plain errors affecting substantial rights may be reviewed on appeal." *Smith*, 183 Ill. 2d at 430, 701 N.E.2d at 1099. As it is a denial of due process to convict a defendant on a charge without evidence to support that conviction (*Gregory v. City of Chicago*, 394 U.S. 111, 112, 22 L. Ed. 2d 134, 136, 89 S. Ct. 946, 947 (1969), citing *Garner v. Louisiana*, 368 U.S. 157, 164, 7 L. Ed. 2d 207, 214, 82 S. Ct. 248, 251 (1961)), we will review defendant's claim of error.

Defendant's argument relies primarily on the one-act, one-crime jurisprudence set forth by our supreme court in *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977), and *People v. Crespo*, 203 Ill. 2d 335, 788 N.E.2d 1117 (2001). In reviewing the one-act, one-crime rule, this court has stated, in part, as follows:

> "[T]he *King* doctrine provides that a defendant's conduct cannot result in multiple convictions if the convictions are based on precisely the same physical act and any of the offenses are included offenses." *People v. White*, 311 Ill. App. 3d 374, 384, 724 N.E.2d 572, 580 (2000), citing *King*, 66 Ill. 2d at 566, 363 N.E.2d at 844.

In the case *sub judice*, defendant argues his convictions in counts I and III were based on the single act of penetrating T.H.'s vagina. In *Crespo*, 203 Ill. 2d at 342, 788 N.E.2d at 1121, the supreme court examined the charging instruments and the way the State presented the case in closing arguments. Here, the charging instruments differentiated the offenses charged. Count I charged defendant with criminal sexual assault, alleging he committed an act of sexual penetration by placing his penis in T.H.'s vagina. Count III charged defendant with aggravated criminal sexual abuse, alleging he committed an act of sexual conduct by fondling T.H.'s vagina for the purpose of his sexual arousal. Further, during closing arguments, the State argued defendant committed an act of sexual penetration with his penis and touched her vagina. Penetration and fondling are two separate acts. Thus, defendant has not set forth any error of the one-act, one-crime rule under *King* and *Crespo*.

In his reply brief, defendant agrees penetration and fondling are two separate acts. However, he now raises the argument the State failed to present evidence proving he fondled T.H.'s vagina, thereby requiring reversal of his conviction for aggravated criminal sexual abuse. With this argument, we agree.

When reviewing a challenge to the sufficiency of the evidence in a criminal case, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Pollock*, 202 Ill. 2d 189, 217, 780 N.E.2d 669, 685 (2002). The trier of fact has the responsibility to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259, 752 N.E.2d 410, 425 (2001). A court of review will not overturn the verdict of the fact finder "unless the evidence is so unreasonable, improbable[,] or unsatisfactory that it raises a reasonable doubt of defendant's guilt." *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004).

In this case, T.H. testified defendant fondled her breasts when they were in the van. He then pulled down her pants and underwear. Defendant undid his pants and put T.H.'s hand on his penis. After T.H. "jerked" her hand away, defendant penetrated her vagina with his penis. T.H. attempted to fight and pull up her pants, but defendant kept pulling them down. No evidence was presented that defendant used his hand in fondling T.H.'s vagina. During closing statements, the State argued "obviously if [defendant] was *** committing an act

of sexual penetration, he was also touching her there in the vaginal region." On appeal, the State contends defendant fondled T.H.'s vagina when he removed her clothing and penetrated her vagina with his penis.

We find the State has failed to show defendant committed an act of sexual conduct by fondling T.H.'s vagina. T.H.'s testimony that defendant removed her pants and underwear did not indicate he touched or fondled her vagina. No testimony was elicited that defendant's hands came near T.H.'s vaginal region. Further, the evidence indicating defendant's penis came into contact with T.H.'s vagina established an act of sexual penetration. Such evidence did not establish an act of fondling by defendant. As the evidence failed to prove defendant guilty beyond a reasonable doubt of count III, defendant's conviction for aggravated criminal sexual abuse must be vacated.

## B. Defendant's Police Statement

■ Defendant argues he was denied a fair trial when Agent Duncan read the entirety of defendant's statement to police to the jury. We disagree.

Our supreme court has held that for an issue to be preserved for review on appeal, a defendant must offer an objection at trial and include that issue in a written posttrial motion. *People v. Breedlove*, 213 Ill. 2d 509, 517, 821 N.E.2d 1176, 1181 (2004); see also *People v. Durgan*, 346 Ill. App. 3d 1121, 1137, 806 N.E.2d 1233, 1245 (2004) (the defendant's failure to raise a timely objection at trial and in a posttrial motion forfeits issue on appeal). In this case, defendant did not raise the issue regarding the reading of his police statement in a posttrial motion. Defendant has therefore forfeited this issue on appeal unless plain error has occurred. "The plain[-]error rule allows a reviewing court to consider a trial error not properly preserved when '(1) the evidence in a criminal case is closely balanced or (2) where the error is so fundamental and of such magnitude that the accused was denied a right to a fair trial.' " *People v. Harvey*, 211 Ill. 2d 368, 387, 813 N.E.2d 181, 193 (2004), quoting *People v. Byron*, 164 Ill. 2d 279, 293, 647 N.E.2d 946, 953 (1995). Here, the evidence was not closely balanced, and the admission of the evidence in question did not deny defendant fundamental fairness.

Even if the plain-error rule did apply, we would find no error on the merits. The case relied upon by defendant, *People v. Ammons*, 251 Ill. App. 3d 345, 622 N.E.2d 58 (1993), is readily distinguishable. In that case, the defendant argued for reversal of his first-degree-murder

conviction because the State replayed an audiotape of his statement to police during rebuttal closing argument. *Ammons*, 251 Ill. App. 3d at 346, 622 N.E.2d at 59. The tape had been played to the jury during a detective's testimony, and the defendant's testimony was similar to the statement he gave to police. *Ammons*, 251 Ill. App. 3d at 347, 622 N.E.2d at 59. The defendant objected to replaying the taped statement during rebuttal and claimed on appeal it overemphasized the State's critical piece of evidence. *Ammons*, 251 Ill. App. 3d at 347, 622 N.E.2d at 59.

On appeal, the Third District noted reading from the trial transcript during closing arguments is improper. *Ammons*, 251 Ill. App. 3d at 347, 622 N.E.2d at 60. In reversing the defendant's conviction, the appellate court found he had been severely prejudiced because allowing the replay of his taped statement during rebuttal "dramatically overemphasized its credibility." *Ammons*, 251 Ill. App. 3d at 347, 622 N.E.2d at 60.

In this case, the State did not attempt to introduce any tapes of defendant's statements to the police. No tape was played to the jury nor was one played during closing arguments. Instead, Agent Duncan read defendant's one-page, handwritten statement to the jury. Such testimony was necessary considering defendant's nearly illegible handwriting. Further, Duncan's reading of the statement did not overemphasize the evidence or deprive defendant of a fair trial. Thus, we find no error in Duncan's testimony.

## C. Defendant's Sentence

■ Defendant argues his sentence was excessive in light of his age and medical condition and the trial court's improper consideration of multiple victim-impact statements. We disagree.

Section 6 of the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/6 (West 2000)) provides the victims of violent crimes with the right to present a victim-impact statement. An offense involving sexual conduct or sexual penetration constitutes a violent crime. 725 ILCS 120/3(c) (West 2000). In *People v. Richardson*, 196 Ill. 2d 225, 229, 751 N.E.2d 1104, 1107 (2001), the supreme court found the Act allowed for the presentation of only one victim-impact statement at sentencing. We note the statute has since been amended (Pub. Act 92—412, § 5, eff. January 1, 2002 (2001 Ill. Laws 2698, 2698)), allowing for impact statements from the victim and the victim's parent or guardian, among others. See 725 ILCS 120/6 (West 2002). Even though the supreme court found error in the trial court's consideration of three victim-impact statements, the court stated article I, section

8.1(d), of the Illinois Constitution (Ill. Const. 1970, art. I, § 8.1(d)) precluded appellate relief on the ground that more than one victim-impact statement had been considered at sentencing. *Richardson*, 196 Ill. 2d at 230, 751 N.E.2d at 1107. Section 9 of the Act also states "[n]othing in this Act shall create a basis for vacating a conviction or a ground for appellate relief in any criminal case" (725 ILCS 120/9 (West 2000)). Thus, defendant is not entitled to relief. See *People v. Harth*, 339 Ill. App. 3d 712, 715, 791 N.E.2d 702, 705 (2003) (even though trial court erred in admitting impact statement from victim's mother, section 9 precluded relief on appeal).

Further, the admission of Lisa Devall's statement did not amount to a due-process violation. "Due process bars the introduction of evidence that is so unduly prejudicial that it renders the sentencing hearing fundamentally unfair." *Harth*, 339 Ill. App. 3d at 715, 791 N.E.2d at 705, citing *Payne v. Tennessee*, 501 U.S. 808, 825, 115 L. Ed. 2d 720, 735, 111 S. Ct. 2597, 2608 (1991), and *Richardson*, 196 Ill. 2d at 233, 751 N.E.2d at 1109. Here, the trial court considered the evidence in aggravation and mitigation. As to the victim-impact statements, the court noted they were unsworn and gave the "appropriate weight to unsworn testimony at a sentencing hearing of a serious nature." The court then focused on defendant's criminal history, his character, the element of deterrence, and his health problems and age. Defendant exaggerates the court's reliance on the statements, and we find no violation of due process.

Moreover, we find the trial court's sentence was not excessive. A trial court has broad discretion in imposing a sentence. *People v. Patterson*, 347 Ill. App. 3d 1044, 1056, 808 N.E.2d 1159, 1168 (2004). "In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed." *People v. Hernandez*, 319 Ill. App. 3d 520, 529, 745 N.E.2d 673, 681 (2001).

On review, a trial court's sentencing decision is entitled to great deference "because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence." *People v. Stacey*, 193 Ill. 2d 203, 209, 737 N.E.2d 626, 629 (2000). Thus, a trial court's decision as to the appropriate sentence will not be overturned absent an abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883 (1977); *People v. Rathbone*, 345 Ill. App. 3d 305, 313, 802 N.E.2d 333, 340 (2003).

In this case, a jury found defendant guilty of criminal sexual assault and aggravated criminal sexual abuse. Criminal sexual assault is

a Class 1 felony (720 ILCS 5/12—13(b)(1) (West 2000)) and carries a sentence of imprisonment of not less than 4 years and not more than 15 years (730 ILCS 5/5—8—1(a)(4) (West 2000)). Aggravated criminal sexual abuse is a Class 2 felony (720 ILCS 5/12—16(g) (West 2000)) and carries a sentence of imprisonment of not less than three years and not more than seven years (730 ILCS 5/5—8—1(a)(5) (West 2000)). As the trial court's 15-year sentence for criminal sexual assault fell within the Class 1 felony sentencing range and its 7-year sentence for aggravated criminal sexual abuse fell within the Class 2 felony sentencing range, we will not disturb sentences within the permissible range absent an abuse of discretion.

Here, the trial court focused on defendant's criminal history, including two prior sex-related felony offenses in Indiana. The court noted the need to deter others and found defendant demonstrated an inability or unwillingness to conform his conduct to the law. The court considered defendant's health problems and age but did not "lend a lot of weight to the fact that he would not be a threat to the community simply because of his health problems and his age." As the aggravating factors outweighed the evidence in mitigation, we find no abuse of discretion in the court's sentence.

■ Although we have concluded the trial court did not abuse its discretion in sentencing defendant to the stated number of years for each count, we do find error with the court's imposition of concurrent sentences in this case. Section 5—8—4(a) of the Unified Code of Corrections (730 ILCS 5/5—8—4(a) (West 2000)) provides that consecutive sentences must be imposed when one of the offenses was a triggering offense. *People v. Harris*, 203 Ill. 2d 111, 115, 784 N.E.2d 792, 795 (2003). Criminal sexual assault is one of the listed triggering offenses requiring mandatory consecutive sentences. 730 ILCS 5/5—8—4(a)(ii) (West 2000). Thus, the sentences imposed on counts I and IV must be consecutive. Defendant's concurrent sentences are void, and we must remand the cause for resentencing. See *People v. Arna*, 168 Ill. 2d 107, 112-13, 658 N.E.2d 445, 448 (1995) (concurrent sentences were void when consecutive sentences are mandatory and appellate court had authority to correct error at any time). Therefore, we vacate the concurrent sentences imposed and direct the trial court to conduct a new sentencing hearing and determine the appropriate sentences to be imposed consecutively as to the remaining two counts.

## III. CONCLUSION

For the reasons stated, we affirm in part, vacate in part, and remand with directions.

Affirmed in part and vacated in part; cause remanded with directions.

APPLETON, J., concurs.

PRESIDING JUSTICE COOK, specially concurring in part and dissenting in part:

I agree the evidence was not sufficient to sustain a conviction on count III.

It is troublesome that we would find that one of defendant's convictions was not supported by any evidence but remand with the observation that defendant's total 15-year sentence could be increased to a total of 22 years. The State generally does not have the right to appeal or cross-appeal in a criminal case. See 188 Ill. 2d R. 604(a)(1). A reviewing court does not have the power to increase the punishment imposed by the trial court. See 134 Ill. 2d R. 615(b). Where a conviction has been set aside on direct appeal the court shall not impose a new sentence that is more severe than the prior sentence. 730 ILCS 5/5—5—4 (West 2000). Section 5—5—4 sets out requirements of due process. See *North Carolina v. Pearce*, 395 U.S. 711, 725, 23 L. Ed. 2d 656, 669, 89 S. Ct. 2072, 2080 (1969); *People v. Kilpatrick*, 167 Ill. 2d 439, 447, 657 N.E.2d 1005, 1008 (1995) (improper chilling effect on appeal).

I can understand how a sentence of 3 years for a Class 1 felony, which carries a sentence of not less than 4 years and not more than 15 years, would be void. In this case, however, a total sentence of 15 years is not void. Even if a consecutive sentence had been imposed on all three offenses here, the trial court could have sentenced defendant to 10 years (4 plus 3 plus 3). The 15-year sentence was well within the power of the trial court. See *People v. Reedy*, 186 Ill. 2d 1, 17, 708 N.E.2d 1114, 1121 (1999) ("we find no justification for disturbing any statutorily sound sentence imposed against any defendant under the void truth-in-sentencing law").

The supreme court has stated that sentences imposed in violation of the mandatory consecutive sentences requirement are void, and there is no valid sentence to increase on remand. *People v. Garcia*, 179 Ill. 2d 55, 73-74, 688 N.E.2d 57, 65-66 (1997). *Garcia*, however, did not involve a case where sentences had actually been increased after remand and did not overrule or even address *Kilpatrick*. *Garcia* recognized that due process may be violated where a defendant can show actual vindictiveness on the part of the sentencing judge. *Garcia*, 179 Ill. 2d at 74, 688 N.E.2d at 66. It may be understandable for a

trial court to increase the total sentence if that is simply the result of imposing consecutive minimum sentences. But why would a trial court increase the total sentence if it did not have to?

The argument that a void sentence may be corrected at any time seems to work only one way. We often reject a defendant's claim that he has not received the mandatory day-for-day sentence credit, or the mandatory $5-a-day sentence credit, on the basis that he has not filed the proper appeal. See, *e.g.*, *People v. Turner*, No. 4—02—0336 (May 5, 2004) (unpublished summary order under Supreme Court Rule 23) (conceded sentence credit may not be allowed on postconviction petition). If a void sentence can be corrected at any time, we should consider those issues.

Since section 5—8—4 was amended to require mandatory consecutive sentences, there have been problems. Where a defendant is convicted of three counts of criminal sexual assault (720 ILCS 5/12—13(a)(3) (West 2000)), and the trial court feels a sentence of 12 years is appropriate, the trial court must be careful. If the trial court sentences defendant to four years on each count, mistakenly believing that the sentences are consecutive, the trial court may discover that it is limited to a sentence of four years. See *People v. Todd*, 263 Ill. App. 3d 435, 636 N.E.2d 114 (1994), *abrogated by Kilpatrick*, 167 Ill. 2d at 445, 657 N.E.2d at 1007-08. In a case where consecutive sentences are appropriate but one of the counts is reversed on appeal, the trial court may be limited to a sentence of 8 years, even though it believed each count warranted a sentence of 12 years.

In the converse situation, where the trial court believes the sentences are concurrent and imposes a 12-year sentence on each count, a subsequent finding that the sentences must be consecutive may impose pressure on the court to impose a 36-year sentence it never intended. The requirement for detailed calculation provides uncertainty and may result in a sentence not originally intended by the trial court. The problem is made worse by the fact that a prosecutor can charge a single criminal sexual assault as several offenses with mandatory consecutive sentences, by charging each touching as a separate act. See *People v. Anderson*, 325 Ill. App. 3d 624, 638, 759 N.E.2d 83, 95 (2001) (Cook, J., dissenting).