NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170878-U

NO. 4-17-0878

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 17, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Pike County |
| DAVID B. FOSTER, | ) | No. 16CF111 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles H.W. Burch, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Steigmann and Justice Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, holding the trial court did not abuse its discretion when sentencing defendant to an extended term of six years in the Illinois Department of Corrections.

¶ 2     In May 2017, defendant, David B. Foster, pleaded guilty to possession of a controlled substance, a Class 4 felony, with open sentencing. A presentence investigation (PSI) report was ordered by the court, and defendant appeared for sentencing in June 2017. At the sentencing hearing, the court sentenced defendant to an extended-term sentence of six years in the Illinois Department of Corrections (DOC) followed by one year mandatory supervised release (MSR).

¶ 3     In October 2017, defendant filed an amended motion to reconsider sentence, and the court held a hearing in November. Citing several reasons, including his mental health

problems, defendant argued his six-year sentence was excessive. The trial court denied the motion.

¶ 4        On appeal, defendant argues the trial court erred by imposing a six-year extended-term sentence and by failing to give proper weight to mitigating circumstances, including defendant's mental health and the nature and circumstances of the offense. We disagree and affirm the trial court's judgment.

¶ 5                              I. BACKGROUND

¶ 6        In August 2016, the State filed three criminal counts against defendant, including one count of unlawful possession of methamphetamine (720 ILCS 646/60(b)(1) (West 2016)), a Class 3 felony; one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)), a Class 4 felony; and one count of unlawful possession of a hypodermic syringe (720 ILCS 635/1 (West 2016)), a Class A misdemeanor.

¶ 7        In May 2017, defendant pleaded guilty for open sentencing to one count of unlawful possession of a controlled substance in exchange for the State dismissing the remaining two counts. The State provided the following factual basis for defendant's guilty plea. On August 9, 2016, after police were called to a disturbance at an apartment building, defendant was observed to throw a syringe into a dumpster and fled from officers. Upon apprehending and searching defendant, officers found in his shorts pocket a pill bottle containing five hydrocodone pills. The bottle had the name Thomas Howland on it. Officers also found 11 loose hydrocodone pills in one of defendant's other pockets. Defendant acknowledged he did not have a prescription for hydrocodone, nor did he have Mr. Howland's permission to have his pill bottle.

¶ 8        At the sentencing hearing in June 2017, the court confirmed receipt of the PSI and attachments and asked for any additions or corrections to be noted by counsel. Defendant's

counsel noted several which were made a part of the record. Citing defendant's "very lengthy criminal history," the State argued for an extended-term sentence of six years' incarceration in DOC with one year MSR. The State noted most of defendant's past offenses were drug related and he was on parole for a 2009 drug offense when he committed the instant offense. Defendant requested probation, arguing such a sentence would allow him to change his life by getting substance abuse and mental health treatment. He said he would be willing to go to a residential treatment facility. Defendant acknowledged he suffered longstanding mental health issues and he often self-medicated with illicit drugs. He noted going to prison had not helped his mental health in the past. In furtherance of his argument for probation, defendant claimed his crime neither caused nor threatened harm. In fact, he claimed the opposite—he was trying to prevent harm. Defendant said he possessed the hydrocodone pills because he feared Thomas Howland would overdose on them. In sum, defendant assured the court, if "you give me a chance at probation *** I will complete it."

¶ 9        In rendering the sentence, the court found two mitigating factors: (1) "defendant's conduct neither threatened serious harm to another nor would he have contemplated that it would" and (2) "the potential detriment to [defendant's] health and/or mental health conditions that would, perhaps, be aggravated or exacerbated by a continued term of imprisonment in the [DOC]." The court elaborated upon defendant's mental health issues and his "difficulty coping with those," opining it would be best for defendant to receive mental health treatment from a doctor or psychiatrist. The court found one aggravating factor, namely, defendant's "significant history of criminality or delinquency." The court cited defendant's 10 past felony convictions, most of them drug-related, and eight misdemeanor convictions. The court observed defendant previously served sentences in DOC of 11, 10, 4½, 4, and 2 years and was on parole for the 2009

controlled substance charge at the time of this offense. In addition, the court noted defendant had been placed on probation a number of times. As the trial court put it, "at least for the last 25 years or so, you've been either in prison, on probation, on bond or on parole." It recognized "there have been times that [defendant] has been placed on probation and has successfully completed it," but defendant also had his probation revoked twice for committing new offenses. Similarly, the court noted it allowed defendant to leave the jail before trial "to go to inpatient substance abuse treatment" but he was "unsuccessfully discharged after nine days." Defendant's conduct while on probation and in inpatient treatment led the court to find he would not be likely to comply with probation now. Upon balancing the aggravating and mitigating factors and noting it must "consider the facts of each case and the history of each defendant on an individual basis," the court sentenced defendant to an extended term—six years of imprisonment in DOC followed by one year of MSR.

¶ 10       In November 2017, the trial court heard arguments on defendant's amended motion to reconsider sentence. Defendant urged the court to reconsider his sentence, pointing to his mental illness and his belief that by holding the pills he was preventing Mr. Howland from overdosing. Defendant argued he could comply with probation if given proper mental health and substance abuse treatment. The State countered by noting defendant raised no new arguments for reconsidering the sentence. The court agreed with the State and denied defendant's motion.

¶ 11       This appeal followed.

¶ 12                                II. ANALYSIS

¶ 13       Defendant argues the trial court erred by imposing upon him an excessive six-year sentence and failing to consider mitigating factors like his mental health issues and the nonserious nature of the offense. Defendant also asks this court to reduce his sentence to three

years, the maximum nonextended-term sentence for his offense. We disagree and decline to reduce his sentence.

¶ 14 A trial court enjoys broad discretion in imposing a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448, 841 N.E.2d 889, 912 (2005). Absent an abuse of that discretion, this court will not disturb a sentence upon review. *People v. Hensley*, 354 Ill. App. 3d 224, 234, 819 N.E.2d 1274, 1284 (2004) (quoting *People v. Kennedy*, 336 Ill. App. 3d 425, 433, 782 N.E.2d 864, 871 (2002)). A trial court abuses its discretion "where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010) (quoting *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000)). Similarly, a court can abuse its discretion if its sentencing decision is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26, 82 N.E.3d 693. We pay "great deference" to a court's sentencing judgment " 'because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence.' " *People v. Hestand*, 362 Ill. App. 3d 272, 281, 838 N.E.2d 318, 326 (2005) (quoting *Stacey*, 193 Ill. 2d at 209).

¶ 15 Likewise, when a sentence falls within the statutory range of possible sentences for a particular offense, we presume it reasonable. *People v. Moore*, 41 Ill. App. 3d 3, 4, 353 N.E.2d 191, 192 (1976). " 'In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed.' " *Hestand*, 362 Ill. App. 3d at 281 (quoting *People v. Hernandez*, 319 Ill. App. 3d 520, 529, 745 N.E.2d 673, 681 (2001)). When mitigating factors are presented to a court, the reviewing court

should presume that the circuit court considered them. *People v. Pippen*, 324 Ill. App. 3d 649, 652, 756 N.E.2d 474, 477 (2001). "The existence of mitigating factors does not require the trial court to reduce a sentence from the maximum allowed." *Pippen*, 324 Ill. App. 3d at 652 (citing *People v. Payne*, 294 Ill. App. 3d 254, 260, 689 N.E.2d 631, 635 (1998)).

¶ 16     In this case, defendant pleaded guilty to unlawful possession of a controlled substance, a Class 4 felony. 720 ILCS 570/402(c) (West 2016). A defendant convicted of a Class 4 felony faces a sentencing range of one to three years in DOC and one year MSR. 730 ILCS 5/5-4.5-45 (West 2016); 730 ILCS 5/5-8-1(d)(3) (West 2016). Given defendant's prior 2009 conviction for unlawful possession of a controlled substance, he was eligible for an extended term of imprisonment ranging from three to six years. 730 ILCS 5/5-8-2(a) (West 2016); 730 ILCS 5/5-4.5-45 (West 2016). Because the trial court's six-year sentence falls within the relevant sentencing range, we presume it is reasonable and will not disturb it absent an abuse of discretion.  See *Moore*, 41 Ill. App. 3d at 4; *Hensley*, 354 Ill. App. 3d at 234.

¶ 17     The record before us reveals the trial court considered all appropriate statutory aggravating and mitigating factors before imposing a six-year sentence. Based on the evidence before it, the court found one "significant" aggravating factor—defendant's lengthy criminal history. The court discussed defendant's 18 prior felony and misdemeanor offenses. The court noted defendant received an 11-year prison sentence for his 2009 felony drug offense and was on parole for that offense when he was arrested for the instant offense. The court further noted defendant twice had his probation revoked and had to serve sentences in DOC. The court also heard evidence in mitigation, including defendant's mental health issues and the fact that his crime neither caused nor threatened serious harm. The court also heard defendant's explanation for his offense—he was holding his friend's hydrocodone pills to prevent him from overdosing.

Defendant, however, contends the trial court somehow underestimated his mental health issues. But through argument from counsel and the PSI with the attached documents, the trial court was certainly aware of defendant's mental health problems and properly considered them.

¶ 18    Our review of the record reveals a thoughtful analysis of the relevant factors in aggravation and mitigation and their relationship to defendant's mental illness. The trial court articulated its consideration of the circumstances created by defendant's mental illness; acknowledging  "the potential detriment to [defendant's] health and/or mental health conditions that would, perhaps be aggravated or exacerbated by a continued term of imprisonment in the [DOC]."  Indeed, the court concluded:

> "[Defendant] does have mental health issues and does have some difficulty
>
> coping with those. And the court would recognize that it would be best for him to
>
> be under continued care of a doctor or psychiatrist towards the end of addressing
>
> those, so that would be for his safety and the safety of others."

¶ 19    The trial court also acknowledged its obligation to first consider probation with conditions intended to restore defendant "to being a useful and productive citizen" through mental health and substance abuse counseling and even recognized how there may be legislative efforts to reduce the numbers of offenders incarcerated primarily because of addiction or mental health issues. However, when balanced against what the court considered defendant's most serious aggravating factor—"the significant history of criminality or delinquency," the court found a sentence to DOC was necessary to deter others, was appropriate when considering all factors in aggravation and mitigation, and that probation would "deprecate the seriousness of the offense and be inconsistent with the ends of justice." The trial court also noted defendant did not qualify for Treatment Alternatives to Street Crime (TASC) probation, did not believe his conduct

was the result of circumstances unlikely to recur, could not find defendant's character and attitude were such as would indicate he was unlikely to commit another crime, and did not believe he was particularly likely to comply with the terms of probation; especially in light of two prior probation revocation proceedings.

¶ 20    The court was sufficiently cognizant of defendant's claimed desire to address his mental illness that after imposing the sentence the court asked defendant if he wanted a recommendation for mental health treatment while in DOC. Interestingly, and perhaps more telling, defendant declined. In our view, this present case is wholly unlike *People v. Robinson*, 221 Ill. App. 3d 1045, 582 N.E.2d 1299 (1991), cited in defendant's brief, where the reviewing court reduced the defendant's sentence because there was *no* consideration of her documented mental health problems. Here, the record confirms that when rendering the sentence, the trial court properly evaluated defendant's mental health problems and acknowledged he needed treatment. Since the trial court sat in the better position to assess defendant's mental health as a mitigating factor, having observed and interacted with him firsthand, we defer to its assessment. *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999) ("A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record.").

¶ 21    In the same vein, the record shows the trial court considered the other mitigating factors defendant re-raises now. The court expressly found as a mitigating factor "that the defendant's conduct neither threatened serious harm to another nor would he have contemplated that it would." Yet finding this as a mitigator did not obligate the trial court to impose a lesser sentence, nor did it prevent the court from imposing the maximum sentence. *Pippen*, 324 Ill.

App. 3d at 652 ("The existence of mitigating factors does not require the trial court to reduce a sentence from the maximum allowed."). The court also considered defendant's explanation for what happened—he was merely holding Mr. Howland's pills and pill bottle to prevent him from overdosing. But it was the trial court's place to either credit or discredit defendant's version of events, not ours. The trial court apparently did not find defendant's alleged benevolence merited a lesser sentence, and we defer to that determination. *Stacey*, 193 Ill. 2d at 209 (instructing "the reviewing court must not substitute its judgment for that of the trial court" regarding sentencing factors "because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence").

¶ 22　　　　In re-raising the same issue he raised in his motion for reconsideration of sentence—the trial court erred by underestimating his mental health issues and overestimating the seriousness of his crime—defendant effectively asks this court reweigh the mitigating and aggravating factors and substitute a sentence different from the trial court's decision, which we cannot do. *People v. Coleman*, 166 Ill. 2d 247, 261-62, 652 N.E.2d 322, 329 (1995) (citing *People v. Pittman*, 93 Ill. 2d 169, 178, 442 N.E.2d 836, 840 (1982)). Defendant's sentence falls within the statutory range of possible sentences for his offense and there is nothing in the record to suggest the court's sentencing decision was fanciful, arbitrary, unreasonable, or manifestly disproportionate to the nature of the offense. *Etherton*, 2017 IL App (5th) 140427, ¶ 26. Accordingly, we conclude the six-year sentence imposed on defendant by the trial court was not " 'greatly at variance with the spirit and purpose of the law,' " nor was it " 'manifestly disproportionate to the nature of the offense.' " *Alexander*, 239 Ill. 2d at 212 (quoting *Stacey*, 193 Ill. 2d at 210). Thus, the court did not abuse its discretion in sentencing defendant to six years in the DOC.

¶ 23 The trial court's thorough and well-reasoned explanation in support of its sentence was of great assistance to the reviewing court's analysis of the issues raised herein.

¶ 24                                    III. CONCLUSION

¶ 25 For the reasons stated, we affirm the trial court's judgment.

¶ 26 Affirmed.