NOTICE
Decision filed 07/22/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 220037-U

NO. 5-22-0037

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 19-CF-1176 |
| | ) | |
| DARIUS D. DAY, | ) | Honorable |
| | ) | Jason M. Bohm, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Wharton and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's improper consideration of a victim impact statement at sentencing did not amount to plain error.

¶ 2    The defendant, Darius Day, appeals his sentence imposed after he entered an open plea of guilty to one count of predatory criminal sexual assault in exchange for the dismissal of two other charges. The defendant argues that the circuit court committed plain error by considering the written victim impact statement of A.H.J. at the defendant's sentencing hearing. A.H.J. was the purported victim of an aggravated criminal sexual abuse charge that had been dismissed as part of the defendant's plea agreement with the State. For the following reasons, we affirm the defendant's sentence.

1

## I. BACKGROUND

¶ 3

¶ 4     The defendant dated Eugenia Herman from 2007 to May 2012. Herman had two daughters from a previous relationship, F.H.J. and A.H.J. She also had two children with the defendant. At the time of the alleged incidents in this case, the defendant was living with Herman and her children. F.H.J. was seven or eight years old and A.H.J. approximately a year younger.

¶ 5     In May 2012, Herman walked in on the defendant touching A.H.J. and confronted the defendant, stating, "What the f*** are you doing to my daughter?" Herman allegedly saw the defendant groping A.H.J.'s buttocks. Herman went to the kitchen, retrieved a knife, and stated she was going to kill the defendant. Herman then chased the defendant out of the house and threw away his belongings. The defendant never returned to the house. Herman asked F.H.J. if she had been abused, and F.H.J. denied that she was. F.H.J. later indicated that she had lied because she was afraid the defendant would physically abuse her if she disclosed any abuse. Between 2012 and 2019, the incident was not reported to police, the Department of Children and Family Services, or anyone else, other than Herman's family members.

¶ 6     On July 1, 2019, while in custody at the Juvenile Detention Center, F.H.J. disclosed that she and her sister A.H.J. had both been "raped" by the defendant approximately eight years prior. F.H.J. was subsequently interviewed at the Child Advocacy Center. F.H.J. stated that the defendant would try to place his penis in F.H.J.'s vagina and that he ejaculated. F.H.J. further stated that on multiple occasions, she awoke to the defendant

touching her while she was in her bed. Specifically, F.H.J. indicated that the defendant placed his mouth on her vagina.

¶ 7 According to Herman, F.H.J. told Herman that the defendant touched F.H.J. and A.H.J. every time Herman left the house. Herman indicated that F.H.J. also told Herman that the defendant made A.H.J. and F.H.J. watch porn, touch each other, touch the defendant's penis until he ejaculated, and take baths. A.H.J. did not provide Herman with details about what had occurred.

¶ 8 The State charged the defendant with two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) (counts I and II) and one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1) (West 2018)) (count III). In count I, the State alleged the defendant committed an act of sexual penetration against F.H.J., who was under the age of 13, by using his mouth to make contact with F.H.J.'s vagina. In count II, the State alleged the defendant committed an act of sexual penetration against F.H.J., who was under the age of 13, by using his penis to make contact with F.H.J.'s vagina. In count III, the State alleged the defendant committed an act of sexual conduct against A.H.J., who was under the age of 13, by touching A.H.J.'s buttocks for the purpose of the defendant's sexual arousal.

¶ 9 The defendant entered into an open plea agreement with the State. In exchange for his plea of guilty to count I, the State agreed to dismiss counts II and III. The trial court accepted the defendant's plea, and the matter was set for sentencing.

¶ 10 A presentence investigation report (PSI) was prepared for sentencing. The PSI provided that the defendant had prior convictions for burglary, operating an uninsured

3

motor vehicle, and driving on a suspended license. The defendant also had prior cases for criminal trespass to land for which he received court supervision and a "city case" for a retail theft offense. The defendant had warrants for misdemeanor offenses from the State of Wisconsin for disorderly conduct with a "modifier use of a dangerous weapon" and sex with a child 16 or older. The Wisconsin cases were pending, and no dispositions were provided. The PSI further provided that the defendant obtained his GED and was unemployed, with a minimal work history. He received supplemental security income from the Social Security Administration. The defendant reported that he had some back problems and high blood pressure. He denied any significant issues with his mental health. The defendant admitted to regularly consuming alcohol and daily cannabis use.

¶ 11    At sentencing the parties did not offer formal evidence. The State had previously submitted written victim impact statements from F.H.J. and A.H.J., as well as a letter from Herman. The defendant submitted letters from his mother, stepfather, grandmother, and girlfriend. The circuit court indicated that the court had reviewed the PSI, the victim impact statements, and the letters submitted on behalf of the defendant.

¶ 12    In F.H.J.'s victim impact statement, she called the defendant sick and expressed hope that he would die. F.H.J. stated that the defendant exposed she and A.H.J. to "some bougish [*sic*] things" at a young age. F.H.J. indicated that she "smoke[d]" in order to think about other things and not be angry. F.H.J. further indicated that she had not discussed what happened with A.H.J. because F.H.J. did not want to hurt A.H.J.'s feelings by telling her that F.H.J. was disgusted with A.H.J. F.H.J. stated she felt this way because the defendant made her touch A.H.J. F.H.J. further stated that she gets sick when thinking

4

about the things the defendant did. F.H.J. expressed that she did not know how to control her feelings and was hurt because she could not help A.H.J. F.H.J. stated that she never talked to anyone about her problems and allowed them to "bottle up" in anger.

¶ 13 A.H.J.'s victim impact statement provided as follows:

> "I am [A.H.J.]. I'm one of the Darius victims. I try to get over about what happen to me but every time I try the problem come back up. I tell everybody I'm ok but I'm not. I tell everybody I don't remember what happen that's because I don't want to show my feelings. I do remember everything that's why its so hard to talk about because the memories come rushing all around my head at once. So I don't know what to say. I hope this is the last step of all of this."

¶ 14 Herman's letter provided that the defendant had hurt her family. She stated that she had spent countless nights wiping tears from her daughters' faces because of the defendant's actions. Herman indicated that F.H.J. had anger issues and found it difficult to trust people. Herman believed that F.H.J. abused drugs and alcohol and cut herself because of the defendant's actions. Herman further indicated that A.H.J. suffered from depression and isolated herself because she was afraid of someone hurting her again.

¶ 15 In mitigation, the defendant submitted letters from his mother, stepfather, and grandmother. The letters generally expressed sympathy for Herman and her family and claimed the defendant had been diagnosed with a mental disability when he was a young child. The defendant's girlfriend also submitted a letter. In her letter, the defendant's girlfriend stated that they had been together nearly 10 years and were living together. She

5

called the defendant a "great man" and a "gentle giant with a soft voice." The defendant's girlfriend indicated that she had "COPD" and a disabled son, and that the defendant was taking care of them.

¶ 16    Following the parties' arguments regarding an appropriate sentence, the defendant made a statement in allocution. The defendant apologized for his actions and stated that he knew he was "deadly wrong to have done these things." The defendant also apologized to F.H.J., A.H.J., their family, his family, and anyone else he had hurt.

¶ 17    Before pronouncing sentence, the circuit court noted that the defendant pled guilty to using his mouth to make contact with the vagina of an eight-year-old child, F.H.J. The circuit court indicated that in crafting a sentence, the court considered the PSI, the victim impact statements, and the letters submitted by the defendant as well as the statutory factors in aggravation and mitigation. The circuit court further indicated that the court was required to weigh the nature and circumstances of the offense, the defendant's history and characteristics, the defendant's rehabilitative potential, the need for the sentence to reflect just punishment, the protection of the public, and the promotion of the ends of justice. The circuit court then stated the following:

> "One of the ends of justice is to consider the victims. And in this case, the victim, [F.H.J.], of Count [I], wrote a victim impact statement. And in that statement, she talks at length about the anger that she deals with as a result of what you did to her when she was eight years old. She talks at length about the negative impact this has had on her life in terms of how she's trying to cope with it.

6

Some of the means that she uses to cope with it are not what we would want anyone to have to turn to, but what you did to her is horrific. That an adult man in any circumstance believes it is appropriate to do what you did to this eight year old child is horrific. It can't be minimized.

The statute—what you're pleading guilty to is a predatory criminal sexual assault. Predator is exactly the right word for what you did. You preyed upon an eight year old child and have negatively impacted the rest of her life. And not only her life. Even the letters of your family recognize the negative impact that you have had on their life. They've apologized to this family. You've apologized to this family. But apologies won't take back what you've done to her.

You said you would apologize, in your allocution, to both girls. Obviously, the letters in mitigation, as well, indicate 'the girls,' speaking as —speaking of them as victims. But the Court has in front of it what you've admitted to, which is Count [I]. And what you've done to her, [F.H.J.], requires a significant sentence."

The circuit court sentenced the defendant to 30 years' imprisonment followed by mandatory supervised release for life.

¶ 18   The defendant filed a motion to reconsider sentence. The defendant requested the circuit court reconsider his sentence because the defendant had complied with the court's orders, had a minimal criminal history, pled guilty, and was "profoundly affected by the

experience" and remorseful. Following a hearing, the circuit court denied the defendant's motion. The defendant appealed.

¶ 19 On appeal, the parties agreed to summary remand, and the case was remanded to the circuit court for the filing of a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). This court ordered that the defendant be given the opportunity to file a new postplea motion, "a hearing regardless of whether a new motion [was] filed," a new judgment and notice of appeal, and strict compliance with the requirements of Rule 604(d). On remand, the defendant filed a motion to withdraw his guilty plea and vacate judgment, alleging ineffective assistance of counsel. Following a hearing the circuit court denied the defendant's motion. This appeal followed.

¶ 20                                      II. ANALYSIS

¶ 21 On appeal, the defendant contends that the circuit court committed plain error and imposed an "unwarranted" sentence because the court considered the written victim impact statement of A.H.J. in aggravation at sentencing. The defendant argues that it was improper for the circuit court to do so because A.H.J. was a purported victim of another crime for which the defendant did not plead guilty. The defendant requests this court exercise our discretion under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) and reduce his sentence to eight years "to reflect the properly considered sentencing evidence." Alternatively, he asks this court to remand his case for a new sentencing hearing without the consideration of A.H.J.'s victim impact statement.

¶ 22 The defendant acknowledges that he did not object to the circuit court's consideration of A.H.J.'s victim impact statement at sentencing and failed to raise this issue

8

in a postsentencing motion. Thus, this issue is forfeited on appeal. *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010). Furthermore, the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/9 (West 2020)) sets forth that "[n]othing in this Act shall create a basis for vacating a conviction or a ground for relief requested by the defendant in any criminal case." See *People v. Raney*, 2014 IL App (4th) 130551, ¶ 40; see also *People v. Hestand*, 362 Ill. App. 3d 272, 281 (2005); *People v. Harth*, 339 Ill. App. 3d 712, 715 (2003).

¶ 23 Nevertheless, the defendant contends that the circuit court erred in considering A.H.J.'s written victim impact statement at sentencing. The defendant argues that consideration of the statement prejudiced the defendant in that it tipped the close balance of the sentencing evidence and undermined the fairness of his sentencing hearing, denying his right to due process. Under the plain error doctrine, we may consider a forfeited claim when a clear and obvious error occurred and (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *Hillier*, 237 Ill. 2d at 545. The defendant bears the burden of persuasion. *Hillier*, 237 Ill. 2d at 545. Under either prong, the first step in our analysis is to determine whether the claim presented on review amounts to a clear and obvious error. *People v. Harvey*, 2018 IL 122325, ¶ 15.

¶ 24 At sentencing, the ordinary rules of evidence governing a trial are relaxed. *People v. Williams*, 2018 IL App (4th) 150759, ¶ 17. The circuit court is given broad discretionary power to consider various sources and types of information so that the court can make a sentencing determination within the parameters outlined by the legislature. *Williams*, 2018,

9

IL App (4th) 150759, ¶ 17. The only requirement for the admission of evidence at sentencing is that it must be relevant and reliable. *People v. Terrell*, 185 Ill. 2d 467, 505 (1998).

¶ 25   The circuit court may consider criminal conduct for which there has been no prosecution or conviction. *Raney*, 2014 IL App (4th) 130551, ¶ 43. Such evidence, however, should be presented by witnesses who can be confronted and cross-examined rather than by hearsay allegations in the PSI, or an attachment thereto, and the defendant should be afforded an opportunity to rebut the testimony. *Raney*, 2014 IL App (4th) 130551, ¶¶ 43-44. A defendant's sentence cannot stand where the defendant has been prejudiced by the procedure adopted or the material considered by the circuit court. *Raney*, 2014 IL App (4th) 130551, ¶ 44.

¶ 26   Under section 6 of the Act, A.H.J. was permitted to submit a victim impact statement. See 725 ILCS 120/6(a) (West 2020) (the court may allow persons impacted by the crime who are not victims to present an oral or written statement). Such victim impact evidence, however, must still be reliable and relevant. Count III, the charge alleging the defendant touched A.H.J.'s buttocks for sexual arousal, had been dismissed as part of the plea agreement with the State. In her statement, A.H.J. referred to herself as one of the defendant's victims but did not specify any conduct committed against her. A.H.J.'s statement also discussed the impact the defendant's unspecified conduct had on A.H.J. Here, we find the appellate court's decision in *Raney* instructive.

¶ 27   In *Raney*, a victim impact statement from the victim's son was attached to the PSI. *Raney*, 2014 IL App (4th) 130551, ¶ 45. The son's statement recounted the defendant's

misconduct when the defendant lived with the son and his mother. *Raney*, 2014 IL App (4th) 130551, ¶ 45. The appellate court found that the impact of the defendant's conduct on the son was irrelevant at sentencing because it was not a result of the conduct for which the defendant was charged. *Raney*, 2014 IL App (4th) 130551, ¶ 45. The court stated that the son "could have been called as a witness to testify about defendant's misconduct (as opposed to submitting a written statement about the impact defendant's prior misconduct had on him), as such behavior reflected on defendant's character." *Raney*, 2014 IL App (4th) 130551, ¶ 45. The appellate court continued, "[h]owever, it was error for the statement to be attached to the PSI and considered by the court in the fashion it was." *Raney*, 2014 IL App (4th) 130551, ¶ 45.

¶ 28    Merely finding error in the circuit court's consideration of a victim impact statement does not require reversal of the defendant's sentence. *Raney*, 2014 IL App (4th) 130551, ¶ 46. Reversal is only warranted where the error was unduly prejudicial or rendered the sentencing hearing fundamentally unfair in violation of the defendant's right to due process. *Raney*, 2014 IL App (4th) 130551, ¶ 46.

¶ 29    Here, although the circuit court noted that it had considered A.H.J.'s victim impact statement, there is no indication in the record that the trial court placed any significant weight on the statement. Indeed, in pronouncing sentence, the circuit court emphasized the conduct that the defendant pled guilty to in count I, placing his mouth on F.H.J.'s vagina. The circuit court noted that this conduct was "horrific" and could not be minimized. The circuit court also made explicit references to F.H.J.'s victim impact statement and the negative impact F.H.J. stated the defendant's actions had on her life. Other than

11

acknowledging that it had considered A.H.J.'s victim impact statement, the circuit court did not refer to the statement or its contents when sentencing the defendant.

¶ 30 We observe that the circuit court referenced the defendant's statement in allocution that he would apologize to "both girls" and that the letters in mitigation referred to the "girls" as victims. The circuit court made explicit, however, that its sentence was based on the offense the defendant committed against F.H.J: "But the Court has in front of it what you've admitted to, which is Count [I]. And what you've done to her, [F.H.J.], requires a significant sentence."

¶ 31 We are satisfied that the defendant's sentence would have been no different had the circuit court not received and considered A.H.J.'s victim impact statement. Based on the circuit court's statements at sentencing, the introduction and consideration of A.H.J.'s statement was not unduly prejudicial, nor was the defendant's sentencing hearing rendered fundamentally unfair. Accordingly, we decline to exercise our discretion and reduce the defendant's sentence pursuant to Rule 615(b)(4) or remand this matter for a new sentencing hearing.

¶ 32 For the foregoing reasons, we affirm the defendant's sentence.

¶ 33 Affirmed.